Hernández Torres, Jueza Ponente
*1177 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos el Municipio de Trujillo Alto, parte apelante, y nos solicita la revisión de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (Hon. Herman Lugo Del Toro, Juez), el 15 de abril de 2004, notificada y archivada en autos copia el 3 de junio del mismo año. Mediante la referida sentencia, el Tribunal de Primera Instancia le ordenó pagar a los apelados la suma de treinta mil cuatrocientos setenta y ocho dólares ($30,478.00), por concepto de las reparaciones especiales a equipos pesados para el año 1996, más costas a tenor con la Regla 44.1 de Procedimiento Civil y los intereses legales a razón del 1.00% a partir de la fecha de la Sentencia según lo dispone la Regla 44.3. Dicha suma corresponde a servicios prestados por el apelado al apelante no pagados.
Examinado el expediente ante nuestra consideración, así como el derecho aplicable, se confirma la sentencia apelada.
I
El 1 de noviembre de 1996, bajo la administración del Alcalde Ramón H. Rivera Fuster, el Departamento de Transportación y Obras Públicas del Municipio de Trujillo Alto, envió a Garaje Cruz un vehículo marca Caterpillar, Modelo Loadder IT-18B, con el propósito de que se le realizaran algunas reparaciones. Posteriormente, el 4 de noviembre del mismo año, el Departamento de Transportación y Obras Públicas del Municipio envió otro vehículo marca Caterpillar, Modelo Traxcavator 953, al Garaje Cruz. Luego de varias interpelaciones del Municipio a través del Ingeniero Esteban Rodríguez Morales, en las cuales se le exigía al apelado las reparaciones y la entrega de los vehículos, el apelado expresó que dicho equipo no sería devuelto sino hasta que se le pagase lo adeudado por el Municipio por los servicios prestados. No fue hasta entonces que el Municipio evaluó y examinó los documentos obrantes en sus archivos, tras lo cual determinó que el contrato realizado entre éste y Garaje Cruz fue contrario a derecho y en consecuencia nulo. Entre los efectos insubsanables alegados por el Municipio se mencionan: falta de cotizaciones, falta de requisición de compras y falta de firmas autorizadas, específicamente las firmas del entonces Alcalde y del Director de Finanzas del Municipio.
Así las cosas, el 28 de octubre de 1998, el Municipio de Trujillo Alto presentó una demanda de entredicho provisional, injunction preliminar y permanente, ante el Tribunal de Primera Instancia, Sala Superior de Carolina, alegando que el aquí apelado había retenido ilegalmente un equipo propiedad del Municipio.
El 1 de febrero de 1999, el apelado presentó en instancia una demanda de cobro de dinero contra el Municipio. Ambos, la demanda de cobro de dinero y el injunction fueron consolidados.
El Tribunal ordenó el 14 de mayo de 2002, la entrega del equipo sin menoscabo de los derechos de las partes, la orden fue acatada por la parte aquí apelada.
En la sentencia dictada el 15 de abril de 2004 y notificada y archivada en autos copia el 3 de junio del mismo año, el tribunal de instancia declara Ha Lugar la demanda de cobro de dinero en todo lo relacionado con la reparación del equipo pesado y Sin Lugar en lo' relativo a los vehículos de flota.
*1178 El 15 de julio, el Municipio de Trujillo Alto, parte apelante, inconforme con dicha determinación, presentó ante este Tribunal de Apelaciones el presente recurso de apelación. En el mismo planteó que se cometieron los siguientes errores:

“Erró el Tribunal de Primera Instancia, Sala Superior de Carolina, al determinar que el Municipio de Trujillo Alto tenía que satisfacer la cantidad alegada en la demanda, en ausencia de obligación, de fondos, ni órdenes de compra autorizando el desembolso para el pago de servicios.

Erró el Tribunal, al determinar que existió cumplimiento específico del Reglamento de Compras del Municipio de Trujillo Alto por las partes sin haber realizado ni una sola determinación de hechos estableciendo qué disposiciones del Reglamento cumplió el apelado.

Erró el Tribunal, al concluir que se dieron los requisitos formales para la validez de un contrato municipal a base de inferencias no corroboradas por la prueba ni los hechos.

Erró el Tribunal, al concluir que en el caso de autos le es de aplicación la doctrina de enriquecimiento injusto.

Erró el Tribunal, al concluir que el apelado produjo prueba suficiente para establecer que el Municipio de Trujillo Alto cumplió con sus obligaciones legales y reglamentarias para validar el contrato de servicios. ”

El 16 de agosto de 2004, la parte apelada presentó su escrito en oposición al recurso. Por ello, con el beneficio de la comparecencia de todas las partes, así como de la transcripción estipulada de la prueba, nos encontramos en posición de resolver.
II
Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procedemos a exponer la norma jurídica aplicable.
A. Aspectos generales sobre los contratos
Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Artículo 1206 del Código Civil, 31 L.P.R.A. see. 3371. Amador Parrilla v. Concilio Iglesia Universal, 2000 J.T.S. 60. Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato, y (c) causa de la obligación que se establezca. Artículo 1213 del Código Civil, 31 L.P.R.A. see. 3391; Díaz Ayala etal. v. E.L.A., 2001 J.T. S. 49. Una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios. Artículo 1230 del Código Civil de Puerto Rico, supra, Sec. 3451. El consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Artículo 1214 del Código Civil, 31 L.P.R.A. see. 3401; Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 521 (1982).
Los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, 31 L.P.R.A. see. 3375. Véase, además: S.L.G. Irizarry v. S.L.G. García, 2001 J.T.S. 164.
Los contratos son negocios jurídicos bilaterales que constituyen una de las fuentes de las obligaciones. Amador Parrilla v. Concilio Iglesia Universal, supra. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral, ni al orden público. Artículo 1207 del Código Civil, 31 L.P.R.A. see. 3372. Véase además: S.L.G. Irizarry v. S.L.G. *1179 García, supra; Trinidad v. Chade, 2001 J.T.S. 112; Luán Invest. Corp. v. Rexach Const. Co., 2000 J.T.S. 196. Amador Parrilla v. Concilio Iglesia Universal, supra. Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos. Artículo 1044 del Código Civil, 31 L.P.R.A. see. 2994.
De conformidad con el principio rector de pacta sunt servanda, las partes contratantes se obligan a todos los extremos de lo pactado que sean conformes a la ley, a la moral y al orden público.
B. Contratación con Municipios
Según se conoce, los municipios son entidades jurídicas de gobierno local, con capacidad legal independiente y separada de la del Estado Libre Asociado. 21 L.P.R.A. see. 4003. Como entidades jurídicas, gozan de aquellos poderes que le han sido conferidos por ley o que resulten implícitos y necesarios para realizar los expresamente conferidos. Véase, Café Rico, Inc. v. Mun. de Mayagüez, 2001 J.T.S. 152; First Bank de P.R. v. Mun. de Aguadillo, 2001 J.T.S. 9; Aut. de Puertos v. Mun. de San Juan, 123 D.P.R. 496, 503 n.1 (1989); 21 L.P.R.A. sec. 4002.
La Ley de Municipios Autónomos, en este sentido, establece que los municipios gozan de autonomía en el orden jurídico, económico y administrativo. 21 L.P.R.A. see. 4004.
Esta autonomía comprende, entre otras cosas, la libertad para administrar sus bienes y disponer de sus ingresos, id., lo que incluye la capacidad para contratar servicios profesionales, técnicos y consultivos, así como para el desarrollo, administración y operación de servicios públicos o facilidades municipales. 21 L.P.R.A. see. 4051.
Ahora bien, la facultad del Municipio de obligar fondos públicos para el pago de una. obligación está condicionada a que se sigan los procedimientos establecidos por ley. Ríos et al. v. Mun. de Isabela, 2003 J.T.S. 123; Las Marías Lab. Corp. v. Mun. de San Juan, 2003 J.T.S. 122; Fernández & Gutiérrez v. Mun. San Juan, 147 D.P.R. 824, 829-830 (1999); Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1005 (1994); Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 55 (1988); Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 691-692 (1987); San Miguel, Etc. & Cía. v. Municipio, 72 D.P.R. 391, 402 (1951); véanse, además, De la Cruz v. Gobierno de la Capital, 68 D.P.R. 534 (1948); Gaya v. Gobierno de la Capital, 68 D.P.R. 281 (1948); Torrellas v. Municipio, 62 D.P.R. 217 (1943); González v. Municipio, 61 D.P.R. 369 (1943); Tomasini v. Municipio de Ponce, 50 D.P.R. 804 (1936).
Los requisitos que deben ser satisfechos para dar lugar a una obligación válida están gobernados por la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4351, así como por el Reglamento Núm. 5262 aprobado el 30 de junio de 1995 por la Oficina del Comisionado de Asuntos Municipales, sobre Normas Básicas Para Municipios.
El requisito primordial para los desembolsos municipales está contenido en la sección citada, 21 L.P.R.A. see. 4351, que lee:
“ — (a) No se podrá incurrir en gastos de fondos públicos municipales que se consideren extravagantes, excesivos o innecesarios. Se entenderá por cada uno de estos términos, lo siguiente:

(1) Gasto extravagante.- Significará todo desembolso fuera del orden y de lo común, contra la razón, la ley o costumbre, que no se ajuste a las normas de utilidad y austeridad del momento.

(2) Gasto excesivo.- Significará todo desembolso por artículos, suministros o servicios cuyo precios cotizados sean mayores que aquéllos que normalmente se cotizan en el mercado en el momento de la 
*1180
adquisición o compra de los mismos, o cuando exista un producto sustituto más barato e igualmente adecuado que pueda servir para el mismo fin con igual resultado o efectividad.

(3) Gasto innecesario.- Significará todo desembolso por materiales o servicios que no son indispensables o necesarios para que el municipio pueda desempeñar las funciones que por ley se le han encomendado. ”

Entre otros requisitos, se exige que todo contrato obre por escrito, Ríos et al. v. Mun. de Isabela, supra; que el mismo sea remitido a la Oficina del Contralor, Las Marías Lab. Corp. v. Mun. de San Juan, supra; Mun. de Ponce v. A.C. et al., 2001 J.T.S. 3; y que la obligación esté debidamente presupuestada, 21 L.P.R.A. see. 4354 (Supl. 2004); Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, a la pág. 55; Morales v. Municipio de Toa Baja, supra, a las págs. 691-692.
El incumplimiento con estos requisitos conlleva la nulidad de cualquier obligación contraída. Ríos et al. v. Mun. de Isabela, supra, a la pág. 1,253; Las Marías Lab. Corp. v. Mun. de San Juan, supra, a la pág. 1,244; Fernández & Gutiérrez v. Mun. de San Juan, 147 D.P.R. 824, a las págs. 830-831; Hatton v. Mun. de Ponce, 134 D.P.R. 1001, a la pág. 1007; Ocasio v. Alcalde Mun. de Maunabo, supra, a la pág. 55; Morales v. Municipio de Toa Baja, supra, a las págs. 691-692.
Una distinción importantísima entre estos casos y el caso de autos, es que los casos mencionados versan principalmente sobre la falta de un contrato escrito, piedra angular para la validez de un contrato con los municipios.
Ocasio v. Alcalde Mun. de Maunabo, supra, es el único que no trata sobre la ausencia de contrato escrito y versa, en vez, sobre la falta de remitirle copia del contrato al Contralor, según lo dispone la ley. El Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, 2 L.P.R.A. see. 97, dispone:
“jljos departamentos, agencias, instrumentalidades, oficinas y todo otro organismo y los municipios del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha del otorgamiento del contrato o la enmienda. ” [Enfasis suplido].
Ocasio v. Alcalde Mun. de Maunabo, supra, también trata sobre la falta de fondos presupuestados para el cumplimiento de los contratos.
En el caso ante nos, no hay falta de contrato escrito, ni tampoco se alega ausencia en la remisión de copia a la Oficina del Contralor. Sí se alega, en cambio, la falta de fondos presupuestados. En cuanto a ello, es conveniente señalar que en la ley se hace una importante salvedad: "No podrá gastarse u obligarse en año fiscal cantidad alguna que exceda de las asignaciones y los fondos autorizados por ordenanza o resolución para dicho año. Tampoco se podrá comprometer, en forma alguna, al municipio en ningún contrato o negociación para pago futuro de cantidades que excedan a las asignaciones y los fondos. Estarán excluidos de lo dispuesto en este inciso los contratos de arrendamiento de propiedad mueble e inmueble y de servicios", Artículo 8.004 (b) de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4354. [Enfasis nuestro]
La Ley impone al alcalde, a los funcionarios y empleados en que éste delegue y a cualquier representante autorizado de éste o del municipio, la responsabilidad de velar por la legalidad, exactitud, propiedad, necesidad y corrección de los documentos y todos los gastos que se autoricen para el pago de cualquier concepto. 21 L.P. R.A. see. 4355.
*1181 El Tribunal Supremo de Puerto Rico ha advertido que los requisitos para la contratación con los organismos municipales están revestidos de una gran importancia pública. Por ello, no cabe eximir a ninguna persona de las consecuencias de nulidad que acarrea el incumplimiento con dichos requisitos, por el hecho de que ello resulte en un enriquecimiento injusto a favor del Estado. Las Marías Lab. Corp. v. Mun. de San Juan, supra; Hatton v. Mun. de Ponce, supra, a la pág. 1010.
El Tribunal Supremo de Puerto Rico ha expresado que: "[l]a buena administración de un gobierno es una virtud de la democracia, y parte de una buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa". Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990).
C. Doctrina del Enriquecimiento Injusto
La doctrina de enriquecimiento injusto es principio general "que opera en todo el ámbito del derecho" y es "un corolario del concepto de equidad, lo cual equivale a decir que es un corolario del concepto de justicia mismo". Díaz v. Aguayo, 2004 J.T.S. 148, a la pág. 178; Silvia v. Comisión Industrial, 91 D.P.R. 891, 898 (1965). De este concepto se habla propiamente "cuando la ley no ha previsto una situación en la cual se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente". J. Puig Brutau, Fundamentos del Derecho Civil, Barcelona, Bosh, Ira. Ed., 1983, Tomo II, Volumen III, a la pág. 44; Díaz v. Aguayo, supra; Ortiz Andújar v. E.L.A., 122 D.P.R. 817 (1988).
Las reclamaciones fundadas en enriquecimiento injusto, al igual que otras de equidad, sólo procede cuando la ley no provea otra causa de acción y cuando la parte reclame el remedio acuda al tribunal "con las manos limpias" Díaz v. Aguayo, supra; Ortiz Andújar v. E.L.A., 122 D.P.R. 817, 823 (1988).
Reiteradamente, el Tribunal Supremo ha reconocido que para que sea de aplicación la doctrina de enriquecimiento injusto es necesario que concurran los siguientes elementos: un enriquecimiento y un empobrecimiento correlativo; la conexión entre ambos; la ausencia de causa que justifique el enriquecimiento y la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa a la situación particular examinada. Díaz v. Aguayo, supra; Matos Nazario v. A.C., 2001 J.T.S. 61, a la pág. 1172; Ortiz Andújar v. E.L.A., supra; Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987); Plan de Bienestar de Salud v. Alcalde Cabo Rojo, 114 D.P.R. 697 (1983).
D. Norma en cuanto a ir en Contra de Propios Actos
Es norma establecida que a nadie le es lícito ir en contra de sus propios actos. Esta norma encuentra fundamento en el principio general de derecho que impone proceder de buena fe en la vida jurídica. Inst. General Electric v. Concrete Builders, 104 D.P.R. 871 (1976). Nuestro más alto foro ha expresado:
"Los presupuestos necesarios o elementos constitutivos para la aplicación de la norma jurídica de que nadie puede venir contra sus propios actos pueden resumirse así: (a) una conducta determinada de un sujeto, (b) que haya engendrado una situación contraria a la realidad, esto es, aparente y, mediante tal apariencia, susceptible de influir en la conducta de los demás, y (c) que sea base de la confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada." Inst. General Electric v. Concrete Builders, supra, a la pág. 878.
La buena fe se extiende a la totalidad de nuestro ordenamiento jurídico. Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339. Es norma básica de derecho que le está impedido a una parte actuar de mala fe e ir contra sus propios actos. Catalytic Inc. v. F.S.E., 121 D.P.R. 98.
*1182 Ill
Pasemos a la aplicación del derecho y a la discusión de los errores señalados por el apelante.
En cuanto al Primer Error señalado por la parte apelante sobre la determinación de instancia a satisfacer el pago en ausencia de obligación, de fondos, ni órdenes de compra autorizando el desembolso, no le asiste la razón. Como ya vimos en 31 L.P.R.A. see. 3375: "Los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley". El Municipio no niega ni el contrato ni el consentimiento. Lo que alega el Municipio es que no se cumplieron los trámites del reglamento para el envío de equipos para reparación en talleres privados, lo cual discutiremos más adelante.
En cuanto a la ausencia de fondos, tampoco le asiste la razón. Como vimos, conforme al Artículo 8.004 (b) de la Ley de Municipios Autónomos, supra, los contratos de arrendamiento y de servicios están exceptuados expresamente de la norma general de que no podrá gastarse u obligarse en año fiscal cantidad alguna que exceda de las asignaciones y fondos autorizados.
En cuanto a las órdenes de compra, refirámonos a las determinaciones de instancia sostenidas por el expediente ante nos. El Tribunal de Primera Instancia determinó que los archivos del Municipio no son ni confiables ni están completos, hecho que el Municipio no refuta. En ocasión del descubrimiento de prueba efectuado por el apelado, se entregaron más de 25 documentos relacionados con los vehículos reparados. Todos esos documentos han sido aceptados por el Municipio como auténticos y válidos. El Municipio admite que el apelado había licitado eficientemente para la prestación de servicios en múltiples ocasiones desde el 1995, más aún, sólo constan dos órdenes de compras en sus archivos. El Municipio no puede exigirle al apelado que produzca órdenes de compra cuando la preparación y archivo de dichos documentos le compete exclusivamente al propio Municipio, sobretodo cuando de la prueba presentada surge que los archivos de éste no son confiables. Tengamos presente que son los alcaldes y los funcionarios autorizados por éste los responsables de la legalidad, exactitud, propiedad, necesidad y corrección de los documentos, 21 L.P.R.A. see. 4355, y que en el propio Reglamento de Compras del Municipio de Trujillo Alto, Art. VIII a la página 9, consta la responsabilidad de la Oficina de Finanzas Municipal de retener una copia de la Orden de Compra y el original de la requisición.
Pasemos a discutir el segundo y tercer error señalado por la parte apelante. El Municipio plantea que instancia erró al determinar que existió cumplimiento específico y al determinar que se dieron los requisitos formales para la validez de un contrato municipal.
Las reparaciones llevadas acabo por el apelado fueron reparaciones de tipo especial. Según el Reglamento de Compras del Municipio de Trujillo Alto (en adelante el Reglamento) para contratar los servicios de talleres privados para la reparación, se requerirá: (1) elaborar una requisición de compras, Modelo DCS-001, con los detalles de los trabajos a efectuarse, (2) solicitar cotización escrita de por lo menos tres talleres privados, (3) envío de la requisición y cotizaciones al Agente Comprador para el trámite correspondiente, y (4) emisión de una Orden de Compra oficial, Modelo AP04. Reglamento, Art. X, Normas y Procedimientos a Seguir en las Distintas Clases o Modalidades de Compras.
En cuanto a las cotizaciones, el propio Reglamento hace la salvedad que en casos de que éstas por la naturaleza del trabajo no se puedan hacer de antemano, el Municipio especificará por escrito los detalles de las reparaciones que entienda necesarias y el suplidor cotizará sobre dicha base. Así, precisamente, es el proceder del apelado y apelante en el caso de autos.
Utilizando el formulario 4-96-14 (Formulario Para Enviar Vehículos Municipales a Talleres Privados, Apéndice XXIII del Escrito de Apelación, pág. 168), el Municipio específica por escrito al apelado los detalles *1183 de las reparaciones que entiende necesarias. En cuanto a los documentos requeridos en el mencionado artículo del reglamento, además de las observaciones ya hechas sobre la deficiencia en los archivos municipales de este tipo de documentos, en el Artículo VIII del Reglamento sobre el procedimiento general de compras, especifica en cuanto a las reparaciones especiales:

“Director del Departamento que necesita el servicio:

Determina la necesidad de obtener los servicios basados en la política establecida por el Alcalde para la obtención de los servicios de que se trate.

Obtiene las cotizaciones para el servicios.

Una vez recibido el servicio, prepara la requisición de compras y tramita la misma según proceda, indicando que se trata de servicio de reparaciones. ” [Enfasis nuestro]
Cónsono al propio Reglamento del Municipio, el aquí apelado prestó el servicio que se le requirió; la responsabilidad de la preparación y tramitación de la requisición de compras es del Municipio. El Municipio estaría yendo contra sus propios actos al alegar la nulidad de una obligación la cual asumió voluntariamente, en acuerdo con los propios reglamentos por él establecidos. Además, es de mencionar que el apelante no sólo le exigió el servicio y la entrega de los equipos al apelado, sino que hasta le reclamó garantía en cuanto a los servicios prestados. (Véase Apéndice Núm. XXIII del Escrito de Apelación, página 176 y Apéndice Núm. 7 del Alegato de la Parte Apelada, página 38)
En Resolución del 27 de octubre de 1997 y notificada ese mismo día, el Juez de Instancia le concede un término a las partes a solicitud de la representación legal del Municipio de Trujillo Alto "para hacer gestiones con la Oficina de la Contralor y la Asamblea Municipal con el fin de conseguir los fondos para pagar los equipos reparados". (Apéndice XXIII del Escrito de Apelación a la página 158)
Es norma establecida que a nadie le es lícito ir en contra de sus propios actos. Esta norma encuentra fundamento en el principio general de derecho que impone proceder de buena fe en la vida jurídica. Inst. General Electric v. Concrete Builders, supra.
El cuarto error señalado por el apelante se refiere a la aplicabilidad de la doctrina de enriquecimiento injusto. El Tribunal de Primera Instancia indicó en su Sentencia que era innecesario elaborar a fondo la aplicación de la teoría de enriquecimiento injusto; estamos de acuerdo. No en balde, haremos la siguiente observación.
Además de existir los demás requisitos de la figura, queremos recalcar que en el caso de autos hubo un claro enriquecimiento por parte del Municipio y un empobrecimiento correlativo de parte del aquí apelado, ya que no sólo se prestaron los servicios requeridos por el Municipio, sino que hasta se honró las garantías por el trabajo prestado, todo ellos sin justa compensación. En Plan Bienestar Salud v. Alcalde de Cabo Rojo, 114 D.P. R. 697, a la página 699, nos dice el Tribunal Supremo:

“Independientemente de la naturaleza jurídica del municipio en Puerto Rico, resulta claro que las obligaciones que contraiga se rigen por principios de Derecho civil, sujeto a estatutos que modifiquen tal situación. ”

Los contratos administrativos se rigen normalmente, en ausencia de régimen especial, por la teoría general de los contratos. J.-M. Auby y R. Drago, Traité de Contentieux Administratifi 2da ed., París, Librairie Genérale de Droit et de Jurisprudence, 1975, T. 11, pág. 480. Ello significa que la doctrina del enriquecimiento injusto, *1184 entre otras, es aplicable a determinadas situaciones en que una de las partes contratantes es un organismo público. S. de 22 de enero de 1975, núm. 8, Aranzadi, XLII Repertorio de Jurispmdencia 20; F. Garrido Falla, Tratado de Derecho Administrativo, Madrid, Centro de Estudios Constitucionales, 1979, Yol. 11, pág. 12 y ss.
Si es cierto que en cuanto a los requisitos de los contratos municipales "no cabe eximir a ninguna persona de las consecuencias de nulidad que acarrea el incumplimiento con dichos requisitos, por el hecho de que ello resulte en un enriquecimiento injusto a favor del estado", según indica el Tribunal Supremo en Las Marías Lab. Corp. v. Mun. de San Juan, supra; Hatton v. Mun. de Ponce, supra; estos casos son claramente distinguibles. Como ya mencionamos anteriormente, el caso ante nos no trata sobre la falta de contrato escrito ni sobre la ausencia de la remisión a la Oficina del Contralor, sino que versa sobre el incumplimiento del propio Municipio.
En cuanto al quinto y última error señalado por el apelante sobre la determinación de instancia al concluir que el apelado produjo prueba suficiente para establecer que el Municipio cumplió con sus obligaciones legales y reglamentarias para validar el contrato de servicio, no le asiste la razón. El propio Reglamento en el artículo X en la sección dedicada a Compra-Servicios de Reparaciones Especiales lee: "Cualquier reparación ordenada a talleres privados fuera de estas normas y pautas, será responsabilidad de la persona que la autorice y su costo tendrá que ser reembolsado al Municipio por dicha persona". [Enfasis nuestro]
Por lo tanto, en el caso que no se hayan seguido las normas reglamentarias, le corresponde al Municipio reclamarle a quien hizo la autorización indebida el reembolso de lo pagado. Por ello, no le compete al apelado probar que el Municipio cumplió con sus deberes y obligaciones para validar un contrato.
IV
Por los fundamentos anteriormente expuestos y en ausencia de violación alguna a la política pública, se confirma la sentencia apelada por ser conforme a derecho.
Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Brau Ramírez disiente con opinión escrita.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones