El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
Este recurso nos permite analizar si es viable, a la luz de la Ley de Municipios Autónomos del Estado Libre Aso-ciado de Puerto Rico de 1991 (Ley de Municipios Autóno-mos), Ley Núm. 81-1991 (21 L.P.R.A. sec. 4001 et seq.), que un contratista realice una obra con anterioridad a la otor-gación del contrato por escrito y aun así, cobre por sus servicios si el contrato es otorgado posteriormente.
En vista del interés apremiante que le hemos reconocido a la protección de los fondos públicos, es necesario que la *533 otorgación del contrato por escrito ocurra antes de que el contratista empiece a realizar la obra. De esta forma, re-afirmamos la “rigurosidad de los preceptos legales que ri-gen las relaciones comerciales entre entes privados y los municipios, que aspiran a promover una sana y recta ad-ministración pública, asunto que está revestido del más alto interés público”. Fernández & Gutiérrez v. Mun. San Juan, 147 D.P.R. 824, 829 (1999). Véase, además Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237, 248 (2007).
I
La peticionaria ALCO Corporation (ALCO) se dedica al suplido, venta, riego y entrega de hormigón asfáltico. En 2002, ALCO compareció a una subasta para la realización de un proyecto de repavimentación en el barrio Lajas, sector Los Rivera Marrero, del municipio de Toa Alta. El 4 de junio del mismo año, la junta de subastas del municipio le notificó al Sr. Alfonso Rodríguez García, presidente de ALCO, mediante carta, la adjudicación a su favor de la subasta # 02-030. Apéndice del Certiorari, pág. 45. Así las cosas, ALCO comenzó a pavimentar el área correspon-diente entre los días 25 y 28 de junio de 2002, sin haberse otorgado el contrato. No fue hasta el 16 de julio de 2002 que este se otorgó. En esa misma fecha se registró en los libros municipales y se envió copia a la Oficina del Contralor. El contrato disponía en la cláusula decimoctava que el término para realizar la obra era un elemento esen-cial del contrato y que ALCO estaba supuesta a comenzar el proyecto en o antes de cinco días luego de otorgado. Apéndice del Certiorari, pág. 49. Además, en la cláusula decimocuarta se consignó que la vigencia del contrato sería de treinta días a partir del 16 de julio de 2002 hasta el 14 de agosto del mismo año. Apéndice del Certiorari, pág. 48. En otras palabras, el contrato tenía un término de treinta días para realizar la obra. Cabe señalar que esta no era la *534 primera vez que ALCO contrataba con el municipio de Toa Alta. Surge del expediente que en el 2000 ganó también la buena pro para otra obra de repavimentación.
Finalizada la obra, ALCO procedió a solicitar el pago de $29,500. Para ello presentó unos comprobantes que refle-jaban que la obra se realizó de 25 a 28 de junio de 2002. Tras varios intentos infructuosos con el municipio, ALCO procedió a presentar una demanda para el cobro de dinero. Posteriormente, presentó una moción de sentencia suma-ria y varias reconsideraciones que fueron declaradas “no ha lugar”.
Luego, el municipio presentó una moción de sentencia sumaria. ALCO se opuso. En su moción, el municipio alegó que “era improcedente la reclamación [de ALCO] toda vez que está sustentada en una obligación contractual su-puesta que no guarda relación alguna con la reclamación del trabajo realizado”. Apéndice del Certiorari, pág. 28. ALCO, por su parte, señaló que “[e]l hecho de que los tra-bajos hayan sido adelantados en nada responde a maqui-naciones fraudulentas, ni malversación de fondos, ni favo-ritismos, ni cualquier otro asunto de los enfrentados por el Tribunal Supremo”. Apéndice del Certiorari, pág. 38. Aña-dió que, contrario a querer cobrar por una obra que no guarda relación alguna con la reclamación del trabajo rea-lizado, “la información del contrato, así como la de la su-basta, guardan completa relación con las facturas presen-tadas por ALCO por los trabajos realizados en el Barrio Lajas”. Apéndice del Certiorari, pág. 39.
El Tribunal de Primera Instancia desestimó la demanda sumariamente a favor del municipio. Entendió que la obra realizada y las fechas de los trabajos no guardaban rela-ción con las reclamaciones presentadas. Razonó que, ante la rigurosidad de los requisitos de contratación con los mu-nicipios,
... ningún contrato otorgado por un Municipio puede tener fecha de vigencia posterior a la fecha de realización de la obra. *535 En otras palabras, ALCO no puede pretender cobrarle al Mu-nicipio por unas obras realizadas anterior a la fecha de otor-gación del contrato en controversia. Claramente se desprende de la prueba presentada por la propia Demandante que las obras que Aleo intenta cobrar al Municipio se realizaron en fechas anteriores a la fecha de otorgación del contrato. Dicha acción no haya [sic] cabida en nuestro ordenamiento jurídico. Apéndice del Certiorari, pág. 84.
A su vez, razonó que ante los requisitos de forma que exige la ley para contratar con los municipios, no se pue-den otorgar contratos para cubrir hechos ocurridos con anterioridad. Apéndice del Certiorari, pág. 85.
Inconforme, ALCO recurrió al Tribunal de Apelaciones. Ese foro confirmó al Tribunal de Primera Instancia. Con-cluyó que a ALCO no le correspondía cobrar por la obra efectuada, ya que la reclamación de cobro presentada contra el municipio proviene de unos servicios prestados antes de la vigencia del contrato presentado en evidencia. Apén-dice del Certiorari, pág. 169. Concluyó que
[r]esolver de otra manera trastocaría el sistema de controles de desembolso de fondos públicos establecido, pues se presta-ría para que se convalidaran acuerdos llegados entre contra-tistas y municipios sin cumplir con el proceso establecido por nuestro ordenamiento. ...
... [E]n vista del interés que representan los fondos públicos, no estamos dispuestos a imponerle al Municipio la responsa-bilidad de cumplir con el pago de una deuda alegadamente contraída por servicios recibidos en una fecha en la que no se encontraba vigente contrato alguno. Id., pág. 170.
Insatisfecha nuevamente, ALCO acudió ante nos. Se-ñaló que erró el foro apelativo intermedio al concluir que en este caso no aplica la doctrina de enriquecimiento injusto. Explicó que varios tribunales en otras jurisdiccio-nes de Estados Unidos han impuesto responsabilidad a los municipios que se benefician injustamente de sus propios actos ultra vires. También señaló que concluir que no pro-cedía el pago por haberse realizado la obra con anteriori-dad a la otorgación del contrato desalienta que se contrate *536 con el Gobierno, pues se lesiona su credibilidad como ente contratante. Añadió que las enmiendas realizadas al Art. 8.016 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4366, y al Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, por la Ley Núm. 127-2004 (2 L.P.R.A. sec. 97) flexi-bilizaron los requisitos de contratación con los municipios y “persiguen establecer unas reglas justas y válidas que eviten que el gobierno, incluyendo sus municipios, pierdan credibilidad a la hora de contratar”. Certiorari, pág. 6.
Asimismo, ALCO arguye que en Cordero Vélez v. Mun. de Guánica, supra, sostuvimos que si una subasta es adju-dicada y notificada formalmente, y el contratista comienza a trabajar sin haber suscrito un contrato, el cobro de los trabajos queda supeditado a que se firme un contrato, aun-que sea en ocasión posterior. En fin, ALCO entiende que como el contrato se otorgó con posterioridad a la realiza-ción de la obra, se registró en los libros del municipio y se remitió a la Oficina del Contralor, esta situación es dis-tinta de la casuística que hemos resuelto relacionada con la contratación gubernamental.
El municipio, en su oposición repitió que no le corres-ponde pagar por una obra realizada con anterioridad a la otorgación del contrato. Añadió que la determinación del Foro de Primera Instancia al desestimar la demanda se debió a la prueba que ALCO presentó, con la que se demos-tró que las obras fueron realizadas con anterioridad a la otorgación del contrato. Decidimos expedir el auto de certiorari. El 12 de noviembre de 2010 el caso quedó for-malmente sometido.
II
Desde nuestros primeros pronunciamientos en cuanto a la contratación con los municipios, hemos dejado claro que a diferencia de la contratación entre partes pri- *537 vadas, “los preceptos legales que rigen las relaciones eco-nómicas entre entidades privadas y los municipios, están revestidos de un gran interés público y aspiran [a] promo-ver una sana y recta administración pública”. Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1005 (1994). Por esa ra-zón, en Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994, 1000 (2009), señalamos que “mediante estatutos espe-ciales, el legislador ha impuesto requisitos y condiciones a la contratación con los municipios. A los contratos con en-tidades gubernamentales se les examina su validez de acuerdo con los estatutos especiales, en lugar de acudir a las teorías generales de contratos”. Véanse, además: Johnson & Johnson v. Mun. de San Juan, 172 D.P.R. 840, 854-855 (2007); Cordero Yélez v. Mun. de Guánica, supra, pág. 252. Por ello, es crucial que los municipios hayan actuado “acorde con los procedimientos establecidos por ley y nues-tra jurisprudencia interpretativa” al momento de desem-bolsar fondos públicos para el pago de las obligaciones contraídas. Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718, 725 (2007).
En Ocasio v. Alcalde Mun. de Maunabo, 121 D.P.R. 37, 54 (1988), enumeramos por primera vez los requisitos de forma que deben observarse al momento de pactar acuerdos con los municipios. Estos son: (1) que el acuerdo se haya hecho constar por escrito; (2) que se mantenga un registro fiel con miras a establecer la existencia del contrato; (3) que se remita una copia de este a la Oficina del Contralor, y (4) que se acredite la certeza de tiempo, esto es, que el contrato se otorgó quince días antes. Véanse, además: Mun. Quebradillas v. Corp. Salud Lares, 180 D.P.R. 1003 (2011); Colón Colón v. Mun. de Arecibo, supra, págs. 726-727; Cordero Yélez v. Mun. de Guánica, supra, págs. 248-249. Puntualizamos que es necesario que cada uno de estos requisitos se cumpla rigurosamente, pues “refleja[n] el interés legislativo de evitar pagos y reclamaciones fraudulentas o ilegales, al crear un meca- *538 nismo de cotejo para perpetuar circunstancial y cronológi-camente dichos contratos”. Ocasio v. Alcalde Mun. de Maunabo, supra, págs. 53-54.
La necesidad de que los contratos municipales consten por escrito tiene su base en un requisito de carácter formal o sustantivo. El contrato escrito es
1... a mejor evidencia de las obligaciones recíprocas que con-traen las partes. Libra a las partes de futuras controversias espúreas [sic] sobre los términos acordados originalmente, pues éstos quedan plasmados de forma objetiva en el acuerdo escrito. Por lo tanto, este requerimiento protege los derechos tanto del municipio como del contratista, en caso de incumplimiento. Co-lón Colón v. Mun. de Arecibo, supra, pág. 726.
Por consiguiente, “los tribunales debemos mirar con cautela reclamaciones fundadas y de acuerdo con contratos, en los cuales las autoridades ejecutantes no han dado cumplimiento a este mandato. Solamente así puede quedar plenamente satisfecho el sentir legislativo y la conciencia judicial adjudicativa sobre desembolsos de fondos públicos”. Ocasio v. Alcalde de Maunabo, supra, pág. 54. Así pues, “[u]na vez se cumplen [sic] con los requisitos ex-puestos, los contratos son válidos, exigibles y gozan de la publicidad requerida por nuestro ordenamiento jurídico para la sana administración de la política pública, en cuanto a la contratación municipal se refiere”. Johnson & Johnson v. Mun. de San Juan, supra, pág. 853. Por ello, “los municipios no deben exigir la ejecución de servicios sin haber certificado a la parte privada que el acuerdo se redujo a un contrato escrito, que se registró y que se remitió copia de éste a la Oficina del Contralor según lo dispone la ley”. (Enfasis nuestro.) Lugo v. Municipio Guayama, 163 D.P.R. 208, 217 (2004), citando a Las Marías v. Municipio San Juan, 159 D.P.R. 868, 879-880 (2003). Claro está,
... con la aprobación de la Ley Núm. 127 de 31 de mayo de 2004 (2 L.P.R.A. sec. 97), el incumplimiento con el requisito de que *539 todo contrato sea registrado y remitido a la Oficina del Con-tralor tal como lo exigen el Art. 1 de la Ley Núm. 18, supra y el Art. 8.016 de la Ley de Municipios Autónomos de 1991, supra, no tiene el efecto de anular el contrato en controversia, aun-que impide que puedan exigirse las prestaciones hasta tanto el acuerdo se registre y se remita a la Oficina del Contralor. Mun. Quebradillas v. Corp. Salud Lares, supra, pág. 1013.
El Art. 1.003(v) de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001(v), define obligación como “todo compromiso contraído legalmente válido que esté representado por orden de compra, contrato o documento similar, pendiente de pago, debidamente firmado y autorizado por los funcionarios competentes para gravar las asignaciones y que es o puede convertirse en deuda exigible”. El Art. 8.004 de la misma ley, 21 L.P.R.A. sec. 4354, ordena que las obligaciones y los desembolsos de fondos se hagan solo para obligar o pagar servicios autorizados por ley, ordenanza o resolución aprobada al efecto, y por los reglamentos adoptados en virtud de estas. 21 L.P.R.A. sec. 4354. Asimismo, el Art. 8.004, id., dictamina que cuando se autorizan créditos para atender los asuntos de un año fiscal específico, estos sean aplicados exclusivamente al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros del municipio durante dicho año. Id. Esto significa que los fondos destinados para un año fiscal solo pueden ser utilizados para obligaciones legalmente contraídas durante ese año, no para obligaciones contraídas en años anteriores o posteriores. Es decir, “un municipio por lo general no puede pactar el pago futuro de cantidades en exceso de la asignación presupuestada para un contrato en particular”. Johnson & Johnson v. Mun. de San Juan, supra, pág. 854.
Como vemos, habrá una obligación por parte del muni-cipio únicamente cuando exista un contrato en virtud de un compromiso legalmente válido. Por eso es que se exige que todos los municipios mantengan “un registro de todos los contratos, escrituras y documentos relacionados que otor- *540 guen, así como de cualquier enmienda a los mismos, deter-minación, constancia o acción que lo resuelva, o deje sin efecto”. Véanse: Art. 8.016 de la Ley de Municipios Autóno-mos, supra; Art. 1 de la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, supra. Véase, además, Art. 4 del Reglamento Núm. 33 sobre Registro de Contratos, Escritu-ras y Documentos Relacionados y Envío de Copias a la Ofi-cina del Contralor, Reglamento Núm. 5743, Departamento de Estado, 28 de enero de 1998, pág. 3.
El contenido de ese registro debe incluir la información siguiente:
(1) Entidad gubernamental. (2) Número del contrato, escri-tura o documento relacionado. ... (3) Fecha de otorgamiento. (4) Contratista. (5) Número de seguro social federal o de cuenta patronal. (6) Valor o cuantía envuelta [sic] de manera total o mensual. Puede ser estimada. (7) Tomo y página del registro. (8) Propósito del contrato, escritura o documento relacionado. (9) Vigencia. Deberán indicarse las fechas de co-mienzo y terminación. (10) Exento. Se indicará si el contrato está exento o no de radicación [sic], según dispone el Artículo 9-a de este Reglamento. Si está exento, se identificará la razón para no radicar [sic] el mismo, utilizando el número de la ex-cepción, según se indica en el Artículo 9-a. (11) Aprobación o dispensa. Se indicará si es o no un contrato que requiere una aprobación previa o dispensa de algún organismo para su otorgamiento. (Énfasis nuestro.) Art. 5 del Reglamento Núm. 5743, págs. 3-4.
La obligación de registrar el contrato en los libros mu-nicipales y el requisito de que el contrato conste por escrito responden a propósitos distintos. Así lo explicamos en Co-lón Colón v. Mun. de Arecibo, supra, pág. 730:
Existe una marcada diferencia entre unos requisitos y otros. La exigencia de que mi contrato suscrito se anote en la bitá-cora municipal y su copia se remita a la Oficina del Contralor de Puerto Rico va encaminada a ofrecerle publicidad, frente a terceros, a la contratación municipal. De esta forma los terce-ros pueden fiscalizarla. Sin embargo, exigir que los contratos suscritos se reduzcan a escrito tiene una insoslayable dimen-sión de sana administración pública, en la medida que permite *541 salvaguardar los intereses de las partes contratantes frente a un incumplimiento, permite la ordenada utilización de los fon-dos municipales, evita la incertidumbre en la confección del presupuesto municipal y hace posible la adecuada identifica-ción de la partida contra la cual se harán los desembolsos pú-blicos en cumplimiento con la ley. Es decir, los primeros son más que nada de carácter procesal y de ordenada tramitación, mas el último [que el contrato conste por escrito] es sustantivo por su directa relación con la sana administración pública. En atención a lo cual, debemos concluir que el incumplimiento con el requisito de reducir a escrito el contrato municipal por fuerza afecta adversamente la eficacia de las obligaciones contraídas.
En resumidas cuentas, “el propósito de los estatutos que regulan la realización de obras y la adquisición de bienes y servicios para el Estado, sus agencias y dependencias, y los municipios, es la protección de los intereses y recursos fiscales del pueblo. De esta forma se evita el favoritismo, el dispendio, la prevaricación y los riesgos del incumplimiento”. Johnson & Johnson v. Mun. de San Juan, supra, pág. 852. Véanse, además: Mun. Quebradillas v. Corp. Salud Lares, supra; Colón Colon v. Mun de Arecibo, supra, pág. 725; Lugo v. Municipio Guayama, supra, pág. 214; Hatton v. Mun. de Ponce, supra, pág. 1005. “A tales efectos, hemos señalado que [las normas esbozadas por la ley y la jurisprudencia] deben ser rigurosamente observadas aun en circunstancias de emergencia.” (Énfasis en el original.) Ríos v. Municipio Isabela, 159 D.P.R. 839, 846 (2003). Véanse, además: Fernández & Gutiérrez v. Mun. de San Juan, supra, pág. 833; Hatton v. Mun. de Ponce, supra, págs. 1005-1009.
Por último, reiteramos que no es permisible que “personas privadas invoquen remedios en equidad frente a los municipios con los que contratan, porque ‘es doctrina reiterada que dichos remedios no se aplicarán cuando resulted) contrario(s) a una clara política pública plasmada en un estatuto o en la Constitución’ ”. Mun. Quebradillos v. *542 Corp. Salud Lares, supra, pág. 1020, citando a Las Marias v. Municipio San Juan, supra, págs. 875-876.
Ill
Como se desprende de los hechos reseñados, el trabajo se terminó dos semanas antes de la otorgación del contrato por escrito. ALCO aduce que el municipio le solicitó que iniciara la obra antes de la fecha cuando se otorgó el contrato por escrito. Sin embargo, ese hecho no pudo ser probado por ALCO. Más aún, aunque partiéramos de la premisa de que así fue que ocurrió, ello no valida el negocio jurídico efectuado. Recordemos lo que una vez más tenemos que repetir: “ las partes privadas deben ejercer un rol más activo al contratar con los municipios.’ ” Lugo v. Municipio Guayama, supra, pág. 217. Lo prudente es que los contratistas exijan de los municipios que el acuerdo se pacte por escrito, y se certifique que se registró y se remitió a la Oficina del Contralor. íd.
Por lo tanto, ALCO realizó el trabajo a finales de junio de 2002 sin tener un contrato escrito que le facultara a realizar esa obra. Con lo único que contaba era con la carta que le adjudicaba la buena pro de la subasta para realizar el proyecto. Eso no era suficiente, pues
... desde hace más de tres décadas establecimos que en nues-tro ordenamiento “una agencia tiene el derecho de revocar la adjudicación de la subasta antes de que se formalice el con-trato correspondiente” .... El fin social que persigue la facultad de rechazar las licitaciones o de cancelar la subasta una vez adjudicada es conceder cierto grado de discreción y flexibilidad que le permita al ente administrativo proteger sus intereses adecuadamente .... (Citas omitidas.) Cordero Vélez v. Mun. de Guánica, supra, pág. 248.
Conforme a lo anterior, a pesar de que ALCO ganó la buena pro en la subasta celebrada, ello no le aseguraba que el municipio le concedería el contrato eventualmente. En ese sentido, avalar que ALCO realizara la obra sin con- *543 tar con un contrato por escrito anularía la facultad que tienen los municipios para revocar la adjudicación de una subasta antes de que se celebre el contrato.
Por otra parte, debemos tener en cuenta que “la facul-tad del municipio de obligar fondos públicos para el pago de una obligación, está supeditada a que se sigan los pro-cedimientos establecidos por ley”. Cordero Vélez v. Mun. de Guánica, supra, pág. 248. Por ello, nos hemos inclinado a una norma restrictiva en la contratación municipal. Id. En este caso la realización de la obra ocurrió en el año fiscal 2001-2002, pero la otorgación del contrato ocurrió en el próximo año fiscal. Esta actuación comprometió los fondos de un año fiscal, para el pago de una obligación contraída ilegalmente en un año fiscal anterior. Todo ello se hizo en clara violación del Art. 8.004 de la Ley de Municipios, supra. Ahora bien, lo anterior no significa que no hay obli-gaciones contraídas legalmente que se puedan pagar en un año fiscal subsiguiente. Siempre que una obligación se haya contraído legalmente en un año fiscal, se justifica su pago aunque este ocurra en otro año fiscal. La justificación es que esos fondos fueron separados para este particular. De la misma manera, tampoco se convalida lo actuado por-que ambos eventos se procesaron en el mismo año fiscal. Es necesaria la otorgación previa del contrato por escrito.
Aunque la realidad es más rica que la imaginación, si validamos la contratación efectuada en este caso, en el fu-turo se podría dar la situación en que un contratista rea-lice deliberadamente la obra con anterioridad, como me-dida de presión para garantizar la otorgación futura del contrato. Asimismo, podría ocurrir que un contratista que realizó la obra antes de la otorgación del contrato espere a que cambie la administración del municipio para tratar de convalidar su acto, suscribiendo el acuerdo. En consecuen-cia, se permitiría que un contratista asuma poderes guber-namentales construyendo en épocas críticas sin un con-trato formal, como por ejemplo, al concluir un año fiscal o *544 en una etapa de transición de una nueva administración municipal. Es decir, validar la teoría que propone ALCO, premiaría a quien se confabule con ún funcionario corrupto del municipio para no seguir las normas de una adminis-tración pública sana, consciente de que tan pronto culmine la obra tendrá derecho a reclamar compensación sin impor-tar que no se siguió la ley al contratar. En fin, son múlti-ples las posibilidades de corrupción que se podrían suscitar si permitimos el desembolso del fondo público por una obra realizada antes de la otorgación del contrato por escrito.
Por otra parte, avalar la actuación de las partes aca-rrearía, en este caso en particular, darle vida retroactiva a un acto que no ocurrió como realmente se expuso en el contrato. Recordemos que la cláusula decimoctava del con-trato en cuestión dispone que “el término para realizar la obra es un elemento esencial del contrato y que [ALCO] estaba supuesta a comenzar el proyecto en o antes de cinco días luego de otorgado el contrato”. Es decir, ALCO podía comenzar a realizar el proyecto cinco días luego de otor-gado el contrato o antes, pero siempre después de otorgado. Además, ese mismo contrato señala en su cláusula decimo-cuarta que su vigencia es de treinta días a partir del 16 de julio de 2002 hasta el 14 de agosto del mismo año. ALCO reclama el pago de una obra construida antes de la vigen-cia del contrato formal.
En su alegato, ALCO hace mención del Art. 1(d) de la Ley Núm. 18, supra, y del Art. 8.016 de la Ley de Munici-pios Autónomos, supra, para exponer que con las enmien-das realizadas a estas leyes se flexibilizaron los requisitos de remisión de contratos al Contralor y se estableció que el incumplimiento con esos requisitos no es causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido. Por eso ALCO entiende que no corresponde en este caso declarar nulo el negocio jurídico efectuado por las partes, aunque el contrato se haya otorgado después de realizada la obra.
*545 ALCO argumenta que estas enmiendas se realizaron con el propósito de promover la credibilidad del gobierno como ente contratante, al establecerse unas reglas justas y válidas que eviten que los municipios pierdan su credibili-dad a la hora de contratar. Sin embargo, de una lectura de las secciones transcritas vemos que a lo que se refiere el Art. 1(d) de la Ley Núm. 18, supra, es al registro que los municipios deberán mantener de todos los contratos que otorguen —incluyendo sus enmiendas— y del envío de co-pia de estos a la Oficina del Contralor. La ley establece que un tribunal no declarará nulo un contrato o sus enmien-das, porque no consten en los registros municipales o por-que no se remitan a la Oficina del Contralor. De esas sec-ciones no se puede interpretar que la intención del legislador fue autorizar retroactivamente un contrato que se otorgue después de realizada la obra.
Un estudio del Informe Positivo sobre la medida (P. de la C. 4243) que rindió la Comisión de Gobierno de la Cá-mara de Representantes nos confirma esta conclusión. Allí se explicó que la enmienda surgió de la necesidad de revo-car el caso Las Marías v. Municipio San Juan, supra. En ese caso, este Tribunal resolvió que los contratos no regis-trados en el Registro de Contratos de la Oficina del Con-tralor eran nulos e inexigibles. La Comisión de Gobierno explicó:
Entre las consecuencias injustas de la norma establecida en el caso Las Marías, se destaca que quien tiene control del trá-mite en el Registro del Contralor es la agencia o municipio y que, si la agencia incumple con este requisito, ya sea por des-cuido, negligencia o intencionalmente, el contrato es nulo y el ente privado no puede cobrar por los servicios o mercancías. Informe Positivo del P. de la C. 4243 de 11 de noviembre de 2003, 6ta Sesión Ordinaria, 14ta Asamblea Legislativa, pág. 2.
Finalmente, la Comisión de Gobierno de la Cámara se-ñaló que la enmienda, “sin vulnerar los requisitos rigurosos de la contratación gubernamental, protege al contratante que descansa en la tramitación legal y adecuada por las *546 agencias y entidades gubernamentales de los requisitos exigidos por ley”. (Énfasis nuestro.) íd., pág. 3.
Como se puede apreciar, la razón principal que motivó a la Asamblea Legislativa a enmendar el Art. 1(d) de la Ley fue que los contratistas no son los encargados de remitir los contratos a la Oficina del Contralor. Ese es un acto que no depende de la diligencia del contratista, sino del muni-cipio o la agencia contratante. Por ende, el legislador con-sideró injusto penalizar al contratista por algo que no de-pendía de su voluntad. Sin embargo, la Comisión de Gobierno enfatizó que la enmienda era meritoria porque no vulneraba los requisitos estrictos que imperan en la con-tratación gubernamental. Uno de esos requisitos es, preci-samente, la existencia de un contrato escrito.
Exigirles a los contratistas que se aseguren de que haya un contrato escrito antes de realizar la obra no depende de otra parte. Tampoco los coloca en una posición desventa-josa como partes contratantes. Por el contrario, les garan-tiza que podrán cobrar por la obra, ya que cuentan con la garantía más segura de la existencia y alcance de la obli-gación contraída: el contrato escrito. Recordemos que ya en el pasado hemos dicho que “aquella parte privada que se cruce de brazos y preste servicios sin exigir prueba feha-ciente de que el Gobierno cumplió con su deber, se arriesga a asumir la responsabilidad por sus pérdidas”. Lugo v. Municipio Guayama, supra, pág. 218. Véase, además, Colón Colón v. Mun. de Arecibo, supra, pág. 729.
Por otro lado, ALCO asegura que en Cordero Vélez v. Mun. de Guánica, supra, sostuvimos que si una subasta es adjudicada y notificada formalmente, y el contratista co-mienza a trabajar sin haber suscrito un contrato, el cobro de los trabajos queda supeditado a que se firme un con-trato aunque sea en ocasión posterior. Certiorari, pág. 7. No tiene razón.
La controversia que tuvimos fue si procedía la acción por incumplimiento contractual y daños y perjuicios contra *547 el municipio, en virtud de una subasta que no se adjudicó formalmente y que tampoco culminó en el otorgamiento de un contrato escrito. Resolvimos que no.
En Cordero Vélez, el Municipio de Guánica celebró una primera subasta en abril de 2001 para la compra de combustible hasta el 30 de junio del mismo año. A esa subasta asistió el señor Cordero Vélez, a quien posteriormente se le notificó por carta que había obtenido la buena pro para el suministro de combustible. Sin embargo, nunca se celebró contrato. No obstante lo anterior, el municipio adquiría el combustible del garaje del señor Cordero Vélez. Posterior-mente, se celebró otra subasta para el periodo de julio de 2001 hasta el 30 de junio de 2002. El señor Cordero Vélez fue el único que asistió a la subasta. Según alegó, el Secre-tario Municipal le indicó que le iban a adjudicar la subasta ya que había sido el único licitador. No obstante, nunca recibió notificación por escrito informándole la adjudica-ción de la subasta. Luego de varios trámites, el señor Cor-dero Vélez se enteró de que el municipio también le com-praba combustible a otro detallista. Así pues, auscultó con el municipio la razón de la no exclusividad en la compra de combustible. El municipio le comunicó que él no tenía una subasta adjudicada, por lo que procedió a descontinuar el pago y la compra de combustible en su estación.
Inconforme, el señor Cordero Vélez presentó una acción de cobro de dinero e incumplimiento de contrato. Alegó que con la segunda subasta se estableció una relación contractual entre el municipio de Guánica y él. El Foro de Primera Instancia concluyó que el municipio de Guánica le adjudicó al señor Cordero Vélez la segunda subasta (2001-2002). Entendió que el municipio, por voz de su Secretario Municipal, le indicó al señor Cordero Vélez que le había adjudi-cado la subasta. Por ello, concluyó que de la subasta nació una relación contractual entre ambas partes.
El Tribunal de Apelaciones confirmó parcialmente al foro de primera instancia. El tribunal intermedio concluyó *548 que carecía de elementos de juicio para intervenir con la determinación del Foro de Primera Instancia. No obstante, reconoció que el pago de una obligación municipal con fon-dos públicos está condicionado a que se sigan los procedi-mientos establecidos por ley. Por ello, ordenó que se otor-gara un contrato por escrito, se inscribiera en el registro municipal de contratos y se notificara a la Oficina del Con-tralor junto con copia de la sentencia.
Tras un análisis de la controversia que tuvimos ante nos, señalamos con relación a la primera subasta que
... [a]unque procedía otorgar un contrato escrito y cumplir con las formalidades legales para que el municipio pudiera desem-bolsar fondos públicos conforme al derecho aplicable, no existe controversia respecto al cumplimiento con los términos de esta subasta.
La controversia en el caso de autos gira en torno a otra subasta, la celebrada en mayo de 2001 para el año fiscal 2001-2002. Al aplicar los preceptos antes expuestos sobre el proce-dimiento para la celebración y adjudicación de subastas mu-nicipales, resulta indiscutible sostener que —contrario a la anterior— la subasta en cuestión no se adjudicó. Cordero Vélez v. Mun. de Guánica, supra, pág. 250.
De lo transcrito se puede apreciar que en Cordero Vélez v. Mun. de Guánica, supra, no dijimos que la realización de una obra con anterioridad a la otorgación del contrato la convalida. No entramos a dilucidar los méritos de la pri-mera subasta. Solo señalamos que, en efecto, se le adjudicó la subasta al señor Cordero Vélez, pues la Junta de Subas-tas le envió una carta en la que le informaba que había ganado la buena pro y que las partes debieron haber con-tratado por escrito. Por consiguiente, no podemos concluir que este Tribunal validó en Cordero Vélez que las obras se pueden realizar con anterioridad a la otorgación de los con-tratos, pues ni tan siquiera analizamos esa vertiente. Solo resolvimos que la segunda subasta no se le adjudicó al se-ñor Cordero Vélez, pues el hecho de que el Secretario Municipal le comentara verbalmente que la subasta se le iba a adjudicar no era suficiente para obligar al municipio a *549 otorgar formalmente esa subasta y perfeccionar un con-trato escrito.
Contrario a la interpretación que ALCO hace, en Cordero Vélez v. Mun. de Guánica, supra, indicamos que no hubo una ratificación del otorgamiento de la subasta por el hecho de que el municipio comprara en la estación del se-ñor Cordero Vélez. Enfatizamos que
[e]n este caso, nunca se otorgó un contrato por escrito. Tam-poco se satisfizo ninguna de las formalidades aplicables a los contratos municipales, las cuales se exigen rigurosamente con miras a proteger el interés público. La salvedad que establece la referida Ley Núm. 127 en cuanto a que no será nulo un contrato válido que no haya sido registrado o remitido a la Oficina del Contralor, no tiene el efecto de alterar la política pública que permea la normativa en torno a la contratación municipal ni exime del cumplimiento con los requisitos antes descritos que hacen exigibles acuerdos que no son legalmente válidos. Es más, la referida disposición parte de la premisa de que se perfeccionó un contrato y de que éste es válido. Puesto que, en el caso de autos, la relación entre el señor Cordero Vélez y el municipio nunca alcanzó la obligatoriedad de un pacto bilateral, resolvemos que al no haber contrato, no proce-día ordenar el cumplimiento de ninguna formalidad, contrario a lo resuelto por el Tribunal de Apelaciones. (Enfasis en el original.) íd., pág. 252.
En fin, señalamos que “en vista del interés que repre-sentan los fondos públicos, no estamos dispuestos a impo-nerle al municipio la responsabilidad de cumplir con un contrato que nunca se perfeccionó”. Id., pág. 253.
ALCO aduce que de nuestro lenguaje se puede concluir indirectamente que si se hubiese otorgado el contrato para la segunda subasta, habría procedido el pago. Ese análisis extiende demasiado lo dicho en Cordero Vélez v. Mun. de Guánica, supra, que es un caso sobre la validez de la adju-dicación de una subasta y no sobre si una obra puede ser realizada con anterioridad a la otorgación por escrito del contrato. Contrario a lo que ALCO alega, en el mismo caso rechazamos la solución sugerida por el foro apelativo inter-medio, que ordenó que se otorgara un contrato por escrito, *550 se inscribiera en el registro municipal de contratos y se notificara a la Oficina del Contralor junto con copia de la sentencia para entonces validar el negocio jurídico. De ha-ber entendido que se podía convalidar lo hecho, habríamos confirmado el remedio de que el contrato se otorgara retro-activamente, pero no lo hicimos.
No estamos avalando que un municipio se beneficie de una obra o un servicio, sin pagar. Tampoco estamos ante un reclamo judicial al funcionario municipal que instó a ALCO a realizar la obra sin que mediara un contrato escrito. Por consiguiente, en lo que al municipio respecta, nos ceñimos al derecho aplicable y reiteramos que el con-tratista debió exigir un contrato por escrito antes de com-prometer sus recursos y realizar la obra. Como toda em-presa comercial, ALCO debía conocer los requisitos de ley para contratar con un municipio y debió exigir su cumpli-miento de manera activa. Véase Lugo v. Municipio Gua~ yanta, supra, pág. 217. La ignorancia de esos requisitos de ley no excusa su incumplimiento. Concluir lo contrario pro-piciaría sin quererlo, “el favoritismo, la corrupción, el dis-pendio, la prevaricación, la extravagancia, el descuido y los riesgos de incumplimiento en la administración pública”. Lugo v. Municipio Guayama, supra, pág. 220.
“La corrupción y el desembolso indebido o ilegal de fondos públicos —en sus formas múltiples, a veces burdas y otras sofisticadas— son actos incompatibles con el sistema de go-bierno democrático consagrado en nuestra Constitución y apuntalado en el respeto a la dignidad humana y los dineros del pueblo como único soberano.” E.L.A. v. Soto Santiago, 131 D.P.R. 304, 322 (1992), citando A.E.E. y A.A.A. v. P.N.P., 128 D.P.R. 294, 294-295 (1991), voto concurrente del Juez Aso-ciado Señor Negrón García, al cual se unieron los Jueces Aso-ciados Señores Rebollo López y Andréu García.
Al presente, la Sec. 6 del Capítulo IX del Reglamento de Administración Municipal de la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.), aplicable a todos los gobiernos municipales, establece:
*551 Sección 6: Contratos de Construcción, Obras y Mejoras Públi-cas
Todo contrato para la construcción de obras y mejoras, debe realizarse luego de celebrada una subasta pública, cuando el costo total de la obra exceda de cien mil ($100,000) dólares. De no exceder dicha cuantía, la contratación de la obra podrá rea-lizarse mediante la solicitud de por lo menos tres (3) cotizaciones.
El contrato debe estipular la cuantía máxima del costo de la obra y la forma de pago e identificar la manera en que se llevará a cabo el monitoreo o la inspección de la obra. Debe proveer además, para la retención de un diez por ciento (10%) de cada pago parcial, hasta que termine la obra o esté sustan-cialmente terminada, conforme los requisitos de Ley, y sea de-bidamente inspeccionada y aceptada por el municipio.
Los municipios deben incluir en sus contratos las cláusulas resolutorias en casos de incumplimiento y cláusulas penales o de daños líquidos por cumplimiento tardío. También deben es-tipular cláusulas que regulen la sub-contratación de trabajos para la obra y de relevo de responsabilidad, entre otras. Deben cumplir con la permisología requerida por las agencias concer-nientes y con los requisitos establecidos en este Reglamento. Los contratos de construcción de obras y mejoras sufragados con fondos federales “Community Development Block Grant” (CDBG), deben cumplir con los requerimientos de la regula-ción federal aplicable y con las directrices de la Oficina. (Én-fasis suplido.) Reglamento para la Administración Municipal, Oficina del Comisionado de Asunto Municipales, Reglamento Núm. 7539, Departamento de Estado, 18 de julio de 2008, pág. 159.
De una lectura de esta sección, resulta inescapable con-cluir que el contrato escrito tiene que suscribirse previo a la ejecución de la obra. En caso contrario, se ignoraría el interés público de regular las inspecciones de la obra y res-tringir los parámetros de subcontratación, entre otras me-didas cautelares contempladas en la citada sección.
Esa norma no es nueva. Al acudir al anterior Regla-mento sobre Normas Básicas de O.C.A.M. nos encontramos con una prohibición expresa a la retroactividad del contrato. La Sección 5(17) del Capítulo I precisaba que la obligación es “un compromiso que esté representado por orden de compra, contrato, o documento similar pendiente *552 de pago, que deberá estar firmado por el funcionario auto-rizado para gravar las asignaciones en el municipio y que puede convertirse en el futuro en deuda exigible.” (Enfasis nuestro.) Reglamento Revisado sobre Normas Básicas para los Municipios de Puerto Rico, Reglamento Núm. 3052 de la Oficina del Comisionado de Asuntos Municipales, 30 de junio de 1995, pág. 4. El resultado al que llegamos hoy es cónsono con esa reglamentación.
Ante ese cuadro, resulta inescapable que, en toda obra o mejora pública municipal tiene que mediar un contrato por escrito, previo a su ejecución. No debemos excusar el cum-plimiento de la normativa que impone al gobierno municipal establecer unas garantías contractuales y protecciones del interés público. Realizar una obra antes de firmar esas cláusulas privaría al gobierno municipal y a los constitu-yentes de protegerse de subcontrataciones ilegales o de la realización de trabajos sin inspecciones ni supervisiones, entre otras deficiencias.
En este caso tampoco aplica la doctrina de enriqueci-miento injusto. Aquí no opera la excepción que permite a un organismo gubernamental invocar los remedios en equidad para evitar un resultado contrario a una política pública estatuida en una ley o en la Constitución. Véase Mun. Quebradillos v. Corp. Salud Lares, supra. Por el con-trario, “permitir una acción en equidad contra un munici-pio para exigir una prestación producto de un contrato nulo violaría la política pública establecida en la Ley Municipal”. íd., pág. 1018.
Por esa razón rechazamos la posibilidad de importar el enfoque de otras jurisdicciones, bajo el cual se convalida la obligación pública sin contrato escrito, mediante la aplica-ción de figuras en equidad, incluyendo la doctrina de enri-quecimiento injusto. Véase, para una propuesta al res-pecto, L. Muñiz Argüelles y J. Alvarado Vázquez, Obligaciones y Contratos, 77 (Núm. 2) Rev. Jur. U.P.R. 645 (2008).
*553 A pesar de lo anterior, comprendemos que puede que en este caso parezca justo compensar al contratista. Al res-pecto, un reconocido autor, profesor distinguido en la ma-teria, ha planteado una alternativa: “¿No debería responder el funcionario por el daño patrimonial que sufre el contratista que de buena fe provee un servicio por su re-presentación engañosa de que se le ha adjudicado un con-trato? Estas obligaciones de los funcionarios serían herra-mientas más efectivas para atajar la corrupción gubernamental, pero ciertamente deben surgir de acción por parte de la Legislatura”. Muñiz Argüelles, id., págs. 650-651.
> H-1
Por lbs fundamentos expuestos, se confirma la sentencia emitida por el Tribunal de Apelaciones. Ese foro actuó con-forme a derecho al convalidar la sentencia sumaria dictada a favor del municipio de Toa Alta. El foro apelativo inter-medio correctamente identificó el peligro de validar actos como el que aquí se suscitó, no importa las buenas inten-ciones de quien lo proponga. “Resolver de otra manera trastocaría el sistema de controles de desembolsos de fon-dos públicos establecidos, pues se prestaría para que se convalidaran acuerdos llegados entre contratistas y muni-cipios sin cumplir con el proceso establecido por nuestro ordenamiento.” Certiorari, pág. 170. Nuestra labor indele-gable de velar por la legalidad en el desembolso del dinero de nuestro Pueblo, nos compele a no admitir este tipo de contratación retroactiva. Resolver de otra forma menosca-baría la normativa rigurosa que la Asamblea Legislativa le ha impuesto a la contratación municipal.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió con el resultado sin opinión escrita. La Jueza Asociada *554 Señora Fiol Matta disintió con una opinión escrita, a la que se unió el Juez Presidente Señor Hernández Denton.