En el Tribunal Supremo de Puerto Rico

| FERNANDEZ & GUTIERREZ, INC.<br><br>      Demandante-recurrido<br><br>      V.<br><br>MUNICIPIO DE SAN JUAN<br><br>      Demandado-peticionario | Certiorari<br><br>99TSPR26 |
|---|---|

Número del Caso: CC-98-119

Abogados de la Parte Peticionaria: Lic. Teresa García Dávila

Abogados de la Parte Recurrida: Lic. Juan Antonio Ortiz
(Bufete Rivera  & Ortiz)

Lic. Hermenegildo Colón Vázquez

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, San Juan

Juez del Tribunal de Primera Instancia: Hon. Angel M.
Almodóvar

Tribunal de circuito de Apelaciones: Circuito Regional de
San Juan

Juez Ponente: Hon. Córdova Arone

Panel integrado por:  Pres. la Juez Ramos Buonomo y los
Jueces González Román y Córdova Arone

Fecha: 3/19/1999

Materia:

Este documento constituye un documento oficial del
Tribunal Supremo que está sujeto a los cambios y
correciones del proceso de compilación y
publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como
un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Fernández & Gutiérrez,
Inc.

    Demandante-Recurrido
      Vs                                    CC-98-119
                                        CERTIORARI

Municipio de San Juan

    Demandado-Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor
FUSTER BERLINGERI.


San Juan, Puerto Rico, a 19 de marzo de 1999.


Tenemos la ocasión para precisar el alcance de las normas que rigen la contratación de arrendamientos por los municipios del país.


I

El 8 de marzo de 1988, la compañía demandante, Fernández & Gutiérrez (en adelante, arrendador), y el Municipio de San Juan, representado por su Alcalde, suscribieron un contrato mediante el cual se le cedía en arrendamiento al Municipio un local localizado en la Avenida Barbosa en Río Piedras, Puerto Rico. El Municipio ubicó en dicho local las oficinas del

Programa de Adiestramiento y Empleo del

Departamento

de Servicios de la Familia (en adelante, Programa). Dicho contrato tenía una vigencia de 5 meses, desde el primero de febrero hasta el 30 de junio de 1988, prorrogable hasta el 31 de enero de 1993, cuando éste terminaba finalmente.

A fines del año 1989, el Municipio indagó si el arrendador tenía espacio adicional en el local para expandir las oficinas del Programa. Este, mediante carta del 9 de noviembre de 1989, contestó que si el Municipio le remitía un compromiso por escrito ("letter of intent") en relación al espacio adicional que interesaba, el arrendador procedería a realizar los arreglos necesarios a las facilidades del local para proveer el espacio solicitado. Además, sugirió en dicha carta que la vigencia del contrato debía ser extendida a vencer en 1997, sujeto a la disponibilidad de fondos para ello.

El 7 de diciembre de 1989, la entonces Directora Ejecutiva del Departamento de Servicios a la Familia del Municipio, (en adelante Directora Ejecutiva) respondió por escrito a la carta del arrendador y le expresó el compromiso solicitado sobre el arrendamiento de las facilidades adicionales, y que aceptaba la extensión del término del contrato hasta el 30 de junio de 1997, sujeto a que hubiese fondos para ello.

El 27 de junio de 1990, el arrendador y el Municipio, representado por el Alcalde, suscribieron un contrato de arrendamiento enmendado. Modificaron el contrato original: 1) a los fines de establecer un pago mensual por consumo de agua; 2) para disponer el arrendamiento de una área

adicional de estacionamiento para alcanzar la cabida total de 110 vehículos; y 3) para acordar el arrendamiento adicional de 3,503.43 pies cuadrados adicionales de espacio de oficina. De acuerdo a los términos y condiciones del contrato original así como de la enmienda, el Municipio se obligaba a pagar al arrendador lo correspondiente por cada una de las partidas adicionales que se habían convenido. Además de estas modificaciones, el contrato original permaneció vigente con toda su fuerza y vigor. **Nada se dispuso en el contrato enmendado sobre la extensión de su término más allá de la fecha original del 31 de enero de 1993.**

Trece meses más tarde, el 24 de julio de 1991, la Directora Ejecutiva emitió una certificación en la cual expresaba su interés de permanecer en las facilidades indefinidamente, a pesar de que el contrato vencía en enero de 1993. Además, señalaba que una vez expirara el contrato, se procedería a extenderlo sujeto a que se recibieran los fondos correspondientes para continuar operando el Programa.

El arrendamiento venció el 31 de enero de 1993 según establecido en el contrato suscrito por las partes. No obstante, el Programa continuó ocupando las facilidades donde estaba localizado, y el Municipio continuó pagando los cánones mensuales correspondientes.

El 24 de mayo de 1993, Fernández & Gutiérrez y el Municipio de San Juan, se reunieron para acordar un nuevo contrato de arrendamiento. La vigencia de este nuevo contrato, al igual que la del contrato original, sería de

cinco meses a contar desde el 1 de febrero hasta el 30 de junio de ese año.  No obstante, las partes no pudieron llegar a un acuerdo sobre las condiciones y términos del nuevo contrato, por lo que éste no se otorgó.

En virtud de la tácita reconducción, el Municipio permaneció en el local hasta el 31 de enero de 1995, cuando desalojó el lugar e hizo entrega de las llaves al arrendador.

El 27 de diciembre de 1995, el arrendador presentó una demanda por incumplimiento de contrato mediante la cual alegó, en esencia, que el Municipio había incumplido el contrato de arrendamiento, al abandonar unilateralmente el local arrendado antes del 30 de junio de 1997.  El Municipio presentó el 6 de febrero de 1996 su contestación a la demanda, junto con un memorando de derecho acompañando una solicitud de sentencia sumaria. En ésta, el Municipio alegaba que el contrato de arrendamiento había vencido el 31 de enero de 1993, por lo que procedía la desestimación de la acción.  El demandante se opuso a la solicitud de sentencia sumaria.  Señaló que el Municipio estaba obligado a permanecer en el local hasta el 1997, por haberse comprometido a ello en las comunicaciones cursadas por la Directora Ejecutiva del Departamento de Servicios a la Familia.

Mediante sentencia sumaria del 29 de mayo de 1996, el Tribunal de Primera Instancia determinó que no existía un contrato que venciera el 30 de junio de 1997, por lo que no podía obligarse al Municipio a permanecer en el local hasta

dicha fecha. En consecuencia, dicho foro desestimó la demanda.

No conforme con dicho dictamen, el demandante acudió al Tribunal de Circuito de Apelaciones y solicitó la revocación de la sentencia de instancia. Alegó como error que existía controversia sobre hechos materiales. El 28 de noviembre de 1997, el foro apelativo revocó la sentencia impugnada y ordenó la devolución del caso a instancia para la continuación de los procedimientos.

Inconforme con este dictamen, el Municipio recurrió ante nos el 2 de marzo de 1998. Alegó que la sentencia sumaria procedía debido a que las comunicaciones cursadas entre la Directora Ejecutiva y el arrendador no podían generar una obligación legal para el Municipio. El 12 de mayo de 1998 emitimos una resolución mediante la cual concedimos a la parte recurrida un término de 30 días para mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia dictada por el Tribunal de Circuito de Apelaciones. Con el beneficio de la comparecencia de la parte recurrida, procedemos a resolver, según lo intimado.

II

Con anterioridad, este Tribunal ha establecido una normativa de especial aplicación a los contratos municipales. Hemos resaltado la rigurosidad de los preceptos legales que rigen las relaciones comerciales entre entes privados y los municipios, que aspiran a promover una sana y

recta administración pública, asunto que está revestido del más alto interés público. Hatton v. Municipio de Ponce, opinión de 12 de enero de 1994, 134 D.P.R. ____, 94 JTS 2; Ocasio v. Alcalde de Maunabo, 121 D.P.R. 37, 54 (1988); Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 693 (1987). Aplica con especial rigor aquí lo que hemos señalado antes sobre los procedimientos de compra y contratación por entidades gubernamentales: "La buena administración de un gobierno es una virtud de democracia, y parte de su buena administración implica llevar a cabo sus funciones como comprador con eficacia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa." Marmol Company, Inc. v. Administración de Servicios Generales, 126 D.P.R. 864 (1990).

La Ley Núm. 18 de 30 de octubre de 1975, 2 L.P.R.A. sec. 97, según enmendada, dispone en cuanto a los contratos otorgados por los municipios:

> [l]os departamentos, agencias, instrumentalidades, oficinas y todo otro organismo y los municipios del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen, incluyendo enmiendas a los mismos, y deberá remitir copia de estos a la Oficina del Contralor dentro de los 15 días siguientes a la fecha de otorgamiento del contrato o la enmienda. (Enfasis suplido)

2 L.P.R.A. sec. 97

Estos preceptos, de sana política administrativa pública, reflejan la intención legislativa de crear un mecanismo de cotejo y publicidad de los contratos otorgados por los municipios, que tiene carácter constitutivo respecto

a la eficacia de éstos. Por ello, hemos recogido dicha

política pública en nuestros pronunciamientos, y así, en

Ocasio v. Alcalde de Maunabo, supra, a la pág. 54,

establecimos los siguientes requisitos formales que deberán

seguirse rigurosamente al momento de pactarse acuerdos con

municipios, a saber:

(1) que se reduzcan a contrato escrito;
(2) se mantenga un registro fiel con miras a establecer
    prima facie su existencia;
(3) se remita copia a la Oficina del Contralor como medio
    de una doble constancia de su otorgamiento, términos y
    existencias; y
(4) se acredite la certeza de tiempo, esto es, haber sido
    realizado y otorgado quince (15) días antes.

En Hatton v. Municipio de Ponce, supra, al reiterar

estos preceptos, expusimos su propósito de evitar el

favoritismo, la corrupción, el dispendio, el descuido y los

riesgos de incumplimiento. En ese caso, el demandante

Hatton, había acordado con un funcionario del Municipio de

Ponce la obtención de un equipo para un centro de

diagnóstico del Municipio. El acuerdo se efectuó mediante

comunicación verbal entre el suplidor y el Municipio. No se

había reducido a contrato escrito ni se había registrado.

Aplicando los preceptos expuestos anteriormente,

determinamos que dicho acuerdo era **ilegal**. Expresamente

resolvimos que las normas aludidas no podían descartarse ni

siquiera en casos de emergencia, y que se requería una

**"escrupulosa adhesión"** a éstas para "prevenir el

despilfarro, la corrupción y el amiguismo". Reiteramos que

"el manejo prudente de fondos públicos está saturado de

intereses de orden público."

III

El Tribunal de Circuito de Apelaciones determinó que en el caso de autos no estaba claro si entre la Directora Ejecutiva y el demandante había quedado establecido un compromiso de extender la fecha del contrato. Indicó el foro apelativo que tampoco estaba claro si aun existiendo tal compromiso entre las partes, éste obligaba al Municipio; ni si dicho compromiso había creado una expectativa real de enmendar el contrato en cuanto a su vencimiento. Por ello, determinó el foro apelativo, que no procedía la sentencia sumaria. Erró dicho foro al resolver de este modo. Veamos.

Podría ser, como resolvió el foro apelativo, que aquí existiese alguna controversia sobre si la Directora Ejecutiva se comprometió de modo definitivo a extender la duración del contrato en cuestión. En su primera carta sobre el particular, dicha Directora Ejecutiva había expresado su anuencia a la propuesta del arrendador de extender la fecha de terminación del contrato, sujeto a que hubiesen fondos para ello. En su segunda comunicación, la Directora Ejecutiva volvió a condicionar tal extensión a que se obtuviesen los fondos federales necesarios para ello. Podía quizás haber alguna duda sobre si había un compromiso definitivo o sólo uno sujeto a la disponibilidad de fondos.

Lo anterior, sin embargo, no impedía que se dictase sentencia sumaria para desestimar la demanda del arrendador. Nótese, para comenzar, que aun si hubiese existido el alegado "compromiso" definitivo de la Directora Ejecutiva,

**éste no obligaba al Municipio**. Las expresiones supuestamente a favor de extender la duración del contrato fueron hechas por la Directora Ejecutiva, **no por el propio Alcalde**, quien es la persona que ostenta por ley la autoridad ejecutiva del Municipio.[1] Los directores de unidades administrativas municipales, como era la Directora Ejecutiva en el caso de autos, no tenían antes, ni tienen actualmente como facultad propia la de hacer compromisos que obliguen al Municipio.[2] En ningún momento la parte demandante ha demostrado, ni siquiera alegado, que la Directora Ejecutiva ostentaba una delegación de autoridad del Alcalde, que le diera la facultad de obligar al Municipio mediante el "compromiso" en cuestión.[3] Por tanto, es evidente que cualquier manifestación de ésta sobre la

---

[1] Artículo 2.03, 3.01 de la Ley Orgánica de los Municipios, Ley Núm. 146 de 18 de junio de 1980. Al momento de surgir los hechos ésta era la ley que regía los municipios. La legislación vigente, dispone igual. Véase Art. 3.009 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4109. Claro está, debe consignarse que cualquier compromiso del Alcalde que conlleve algún reajuste presupuestario, debe ser aprobado por la Asamblea Municipal. Véanse, Artículo 4.18 de la Ley Orgánica de Municipios y Artículo 5.005 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4205.

[2] La Ley Orgánica de Municipios no disponía facultades propias a estos funcionarios municipales. En la Ley de Municipios Autónomos de 1991 no se incluye la facultad referida entre los poderes que se le otorgan por ley. Artículo 6.003 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4253.

[3] La facultad aludida puede delegarse, si se hace formalmente por escrito. Artículo 3.009(x) de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4109(x).

extensión de los términos del contrato constituía sólo una recomendación y no un compromiso vinculante.[4]

Más importante aun, aunque hubiese existido un "compromiso" de extender la duración del contrato de parte de las autoridades municipales con facultad para hacerlo, dicho compromiso no podía generar obligación jurídica de clase alguna para el Municipio, debido a que éste no se hizo de conformidad con las normas aplicables expuestas antes. El supuesto "compromiso" **no constaba en un contrato escrito**. A pesar de lo expresado por la Directora Ejecutiva en su primera carta, dicho "compromiso" no se incluyó en la enmienda al contrato. Por ende, tampoco fue registrado ni presentado en la Oficina del Contralor. La ausencia de estos elementos, que según hemos expuesto antes, son de observancia rigurosa, privan de eficacia y validez al supuesto acuerdo del arrendador con la Directora Ejecutiva de extender la duración del arrendamiento en cuestión. El requisito de formular lo acordado mediante contrato escrito, era indispensable y, como resolvimos en Hatton v. Municipio de Ponce, supra, hay que cumplirlo "sin excepción alguna", para que lo convenido sea vinculante.

Igual que en Morales v. Municipio de Toa Baja, supra, y Hatton v. Municipio de Ponce, supra, el demandante, Fernández & Gutiérrez conocía los requisitos de ley para formalizar acuerdos de esta índole, pues había contratado

---

[4] En efecto, debe señalarse que en los dos contratos referidos, que fueron firmados por el alcalde, aparece también la firma de la Directora Ejecutiva bajo el acápite de "recomendado por", lo que confirma que su autoridad se limita a hacer recomendaciones.

antes con el Municipio. De hecho, el contrato de arrendamiento suscrito entre las partes cumplía con todos los requisitos estatutarios. Ya hemos establecido que "[l]as normas estatutarias aplicables persiguen proteger el interés público y no a las partes contratantes." Morales, supra, a la pág. 697. El demandante sabía o debía saber que un acuerdo en contravención a las normas aplicables era ineficaz. El interés público así lo requiere.

En múltiples ocasiones, hemos expresado que el propósito principal de la moción de sentencia sumaria, según dispone la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales por lo que no ameritan la celebración de un juicio en su fondo. Hurtado v. Osuna, opinión de 30 de junio de 1995, 138 D.P.R.___, 95 JTS 98; Worldwide Food v. Alberic Colón, opinión de 30 de junio de 1993, ___ D.P.R. _____, 93 JTS 114; González v. Alicea, opinión de 4 de febrero de 1993, ____ D.P.R. ____, 93 JTS 16; Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987). Esa es la situación del caso de autos. No existe controversia real sobre el determinante hecho de que no se suscribió el indispensable contrato escrito para extender su duración luego de vencido el contrato en 1993. Como vimos, el supuesto acuerdo con la Directora Ejecutiva para extender el vencimiento del arrendamiento no podía generar una obligación vinculante

para el Municipio.  Como no existía un contrato válido que venciera en 1997, procedía la desestimación de la demanda.


IV

Por los fundamentos expuestos, se dictará sentencia para revocar la del Tribunal de Circuito de Apelaciones y desestimar la demanda presentada por Fernández & Gutiérrez.



                              JAIME B. FUSTER BERLINGERI
                                   JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Fernández & Gutiérrez,
Inc.

    Demandante-Recurrido

      vs.                                CC-98-119
CERTIORARI

Municipio de San Juan

    Demandado-Peticionario



SENTENCIA



San Juan, Puerto Rico, a 19 de marzo de 1999.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se revoca la del Tribunal de Circuito de Apelaciones y se desestima la demanda presentada por Fernández & Gutiérrez.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton concurre sin opinión escrita. El Juez Asociado señor Corrada del Río está inhibido.



Isabel Llompart Zeno
Secretaria del Tribunal Supremo