Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta,
a la que se une el Juez Presidente Señor Hernández Denton.
La Opinión del Tribunal en este caso parte de la pre-misa equivocada de que la totalidad de la prestación de la parte peticionaria se hizo antes de otorgarse el contrato por escrito. Al hacerlo, no discute ni precisa las caracterís-ticas y elementos constitutivos del tipo de contrato acor-dado en este caso. Tratándose de un contrato de ejecución de obra, en el cual la prestación principal tiene lugar al entregarse la obra acordada, lo que nos correspondía deter-minar era si antes de esa entrega se habían dado los requi-sitos para el perfeccionamiento de la obligación estableci-dos en la normativa sobre contratos municipales. La Opinión mayoritaria añade, innecesariamente, un requi-sito formal constitutivo a los contratos municipales que no está contemplado por la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (Ley de Mu-nicipios Autónomos), Ley Núm. 81-1991 (21 L.P.R.A. sec. 4001 et seq.), entiéndase, el tener que plasmar el contrato por escrito antes de que se lleve a cabo la obra solicitada. Por no coincidir con el análisis mayoritario, me veo en la obligación de disentir.
i — I
El 4 de junio de 2002, el municipio de Toa Alta notificó a la peticionaria ALCO Corporation (ALCO) que recibió la buena pro de la subasta 02-030 para un proyecto de repa-vimentación en el barrio Lajas de ese municipio. El con-trato de ejecución de obra se perfeccionó el 16 de julio de *555 2002, fecha en la que se puso por escrito, se registró en los libros municipales y se envió copia a la Oficina del Contralor. El costo de la obra ascendía a $29,500. El con-trato tendría una duración de aproximadamente un mes.(1) No hay controversia en cuanto a que ese contrato cumplió con los cuatro requisitos formales que exige La Ley de Mu-nicipios Autónomos para los contratos municipales.
Según la peticionaria, el municipio de Toa Alta le soli-citó que iniciara el trabajo de repavimentación antes de la fecha en la que se perfeccionaría formalmente el contrato.(2) De lo que no hay controversia es que a finales de junio de 2002, ALCO llevó a cabo el trabajo de repavi-mentación según descrito en la subasta 02-030 y, eventual-mente, en el contrato de ejecución de obra de 16 de julio.(3) Es decir, realizó su trabajo antes de perfeccionarse el contrato.(4) Sin embargo, la certificación final de la obra, con miras a que ésta fuera aceptada y recibida por el mu-nicipio de Toa Alta, se hizo el 31 de julio de 2002, es decir, durante el término de vigencia del contrato.(5) No obstante, el municipio rehusó certificar la obra y no desembolsó pago alguno a favor de ALCO.
Tras unas gestiones de cobro infructuosas, ALCO pre-sentó una demanda para cobro de dinero contra el munici-pio de Toa Alta, reclamando $29,500 por el trabajo reali-zado como una deuda vencida, líquida y exigible. Ambas partes solicitaron sentencia sumaria. El municipio alegó *556 que era “improcedente la reclamación presentada en su contra por estar sustentada en una supuesta obligación contractual que no guarda relación alguna con la reclama-ción por el trabajo realizado”.(6) Adujo, en particular, que como el trabajo de repavimentación se llevó a cabo antes de que el contrato se pusiera por escrito según exige la nor-mativa relativa a los contratos municipales, no estaba obli-gado a cumplirlo.(7)
El Tribunal de Primera Instancia declaró “con lugar” la moción de sentencia sumaria presentada por el municipio y desestimó la demanda. En síntesis, determinó que ALCO no podía cobrar por un trabajo realizado antes de que se per-feccionara el contrato de ejecución de obra. Inconforme, ALCO recurrió al Tribimal de Apelaciones. El foro interme-dio, en lo pertinente, confirmó el fallo del tribunal de instancia. El Tribunal de Apelaciones determinó que, como el contrato perfeccionado el 16 de julio no hacía mención de que la obra había comenzado antes de la fecha de vigencia del contrato y disponía que cualquier cambio al mismo debía hacerse por escrito, ALCO no podía reclamar pago alguno por los trabajos realizados antes del perfeccionamiento.
Inconforme, ALCO recurrió ante este Tribunal. En lo pertinente, alegó que el Tribunal de Apelaciones erró al concluir que ALCO no podía reclamar el pago por la obra ejecutada, porque el trabajo sobre la obra se hizo antes de haberse perfeccionado el contrato. En particular, ALCO cuestiona si se puede “desestimar una demanda sobre co-bro de dinero de unos trabajos debidamente subastados, presupuestados, realizados al amparo de un contrato es- *557 crito y firmado, archivado en los libros del Municipio y re-mitido a la Oficina del Contralor, [por el hecho de que] el contratista respondió a la petición [del] Municipio de ade-lantar los trabajos unos días”.(8) Con ello, alega la peticio-naria, se lesionaría la credibilidad del gobierno como ente contratante. Por su parte, el municipio se centra en el he-cho de que “las obras en cuestión fueron realizad [a] os con anterioridad a la prestación [sic] del [contrato] ”.(9) Además, alegó que no se demostró que el municipio solicitara que se adelantara la obra. Finalmente, argumenta que los contra-tos “no pueden ser otorgados para cubrir hechos ocurridos antes de la otorgación [de los mismos]”.(10)
II
La facultad de los municipios para contratar, y el consi-guiente derecho de los contratistas a reclamar que éstos cumplan con sus prestaciones, está condicionada a que el contrato acordado cumpla con unos requisitos formales.(11) Estos son: (1) que el acuerdo se haya hecho constar por escrito, (2) que se mantenga un registro fiel con miras a establecer la existencia del contrato, (3) que se envíe copia de éste a la Oficina del Contralor y (4) que se acredite la certeza del tiempo, esto es, que el contrato se otorgó no más de quince días antes.(12) Estos requisitos deben ser observados rigurosamente “ya que su ausencia priva de efi-cacia y validez el acuerdo con el municipio”. (Énfasis *558 suplido.)(13) Es decir, “ningún municipio podrá satisfacer deuda alguna que no surja de un contrato que conste por escrito y que a su vez haya sido registrado y remitido a la Oficina del Contralor”. (Enfasis suprimido.)(14) Para que los contratos otorgados por un municipio sean válidos y tengan, por lo tanto, efecto vinculante entre las partes, tie-nen que cumplir con estos requisitos formales.(15) Un acuerdo en contravención a estas normas es ineficaz.(16)
Como bien dice la Opinión mayoritaria, estos requisitos, y su rigurosa observancia, tienen como objetivo la sana y recta administración pública.(17) Hemos afirmado que este objetivo es “del más alto interés público”.(18) El propósito de esta política no es favorecer al municipio, sino proteger los fondos públicos.(19) Constantemente hemos manifestado que la buena administración de un gobierno es una virtud de la democracia, y parte de una buena administración im-plica llevar a cabo sus funciones como comprador con efi-ciencia, honestidad y corrección para proteger los intereses y el dinero del Pueblo al cual ese gobierno representa.(20) De esta manera se evita “el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido de otorgarse los contratos, y minimizar los riesgos de *559 incumplimiento”.(21) Por lo tanto, es deber de los tribunales evitar que se burlen las disposiciones legales que protegen los fondos públicos y la integridad en la gestión gubernamental.(22)
El cumplimiento con los requisitos formales mencionados tiene un “carácter constitutivo respecto a la eficacia de las obligaciones contraídas”. (Enfasis suplido.(23) Un contra-tista que pacte con un municipio sin que se cumplan estos requisitos asume el riesgo de no poder exigirle a la entidad municipal el cumplimiento de la obligación. Mientras haya incumplimiento, el contratista no tendrá causa de acción.(24) En particular, hemos insistido en la necesidad de que los contratos municipales se pongan por escrito, elemento que hemos descrito como “indispensable ... para que lo conve-nido tenga efecto vinculante”. (Enfasis suprimido.)(25)
Ahora bien, una vez se cumplen los requisitos formales de contratación, los contratos entre la entidad municipal y el contratista son válidos y exigibles.(26) En esos casos, lo que resta es analizar el negocio jurídico pactado y las obli-gaciones asumidas, como ocurre con cualquier otra relación contractual.(27) En De Jesús González v. A.C., manifesta- *560 mos que “[c]uando el Estado contrata, la interpretación del contrato debe hacerse como si se tratara de una contrata-ción entre dos personas particulares .... Ello significa que una vez el Estado suscribe un contrato con una persona privada, ambos están obligados por las normas generales relativas a los contratos y sus correspondientes interpreta-ciones a la luz de nuestros pronunciamientos aplicables”. (Citas omitidas. )(28) Claro está, será a partir del cumpli-miento con los requisitos de forma que el municipio que-dará obligado frente al contratista y éste podrá requerirle el pago del precio acordado.
La Opinión del Tribunal acepta que, en este caso se cumplieron los cuatro requisitos de la Ley Núm. 81(29) pero añade un quinto requisito de forma que no está establecido en la Ley de Municipios Autónomos: que el contrato se ponga por escrito antes de que comiencen las labores del contratista. Esto con el propósito de evitar, según la mayo-ría, que un contratista realice una obra sin contrato y luego exija el pago al municipio. Sin embargo, la mayoría olvida que, como la firma del contrato es requisito sine qua non, si el contratista lleva a cabo la obra y no se firma un contrato, no podrá exigirle nada al municipio. Es más, en una situación de ejecución de obra, como la presente, nada obliga al municipio a firmar el contrato y pagar la obra. Ahora bien, si el propio municipio decide voluntariamente obligarse después de realizada la obra, observando los re-quisitos de la Ley de Municipios Autónomos, no hay nada en esta que le prohíba hacerlo.(30)
*561 III
Aun si coincidiéramos con la mayoría en que el contrato debe perfeccionarse por escrito antes de que se lleve a cabo el trabajo solicitado, ello no resuelve la controversia que nos plantea este caso. No podemos perder de perspectiva que estamos ante un contrato de arrendamiento de obra. Por lo tanto, para determinar cuándo debió haberse perfec-cionado el contrato en este caso, es necesario examinar esta figura contractual antes de fijar el momento en que debieron cumplirse los requisitos de forma de la Ley de Municipios Autónomos, incluso el nuevo requisito de irre-troactividad establecido por el Tribunal. No propongo que se ignoren los estatutos especiales y se recurra exclusiva-mente a la teoría general de los contratos. Más bien, re-cuerdo que, como tribunal, nos corresponde examinar la interacción entre la ley especial y las diferentes figuras de nuestro derecho contractual, pues no todos los contratos son iguales.
Mediante el contrato de arrendamiento de obra, tam-bién conocido como contrato de obra, contrato de empresa o contrato de ejecución de obra,(31) una parte se obliga a eje-cutar una obra a cambio de un precio establecido previamente.(32) En particular, como nos explica Puig Bru-tau, éste “es el contrato por el que una de las partes ... se obliga frente a la otra ... a la producción de un determi-nado resultado con su actividad independiente, a cambio *562 de un precio cierto”. (Énfasis suplido.(33) La correlación en-tre el contrato de arrendamiento de obra y la producción de un resultado es una característica umversalmente acep-tada por la doctrina.(34) A igual conclusión ha llegado, con-sistentemente, el Tribunal Supremo de España.(35) Como se desprende del propio término, el énfasis en el resultado apunta, necesariamente, hacia un elemento temporal: se trata de la culminación de un proceso productivo.(36)
A. En el contrato de arrendamiento de obra, las obliga-ciones principales del contratista son: (1) realizar la obra y (2) entregarla.(37) Por su parte, el dueño de la obra tiene dos obligaciones esenciales: (1) recibir la obra(38) y (2) pagar el *563 precio en la forma, la cuantía y el tiempo convenidos.(39) Nos corresponde ahora analizar por separado estas prestaciones para luego discutir cómo interactúan entre sí.
Si bien la característica fundamental del contrato de arrendamiento de obra es la producción de un resultado, el proceso que conlleva ese producto está compuesto, a su vez, de un trabajo inicial y una entrega final. Ahora bien, dada la importancia del resultado, el trabajo inicial es única-mente un primer paso en el cumplimiento de la prestación a la que se obliga el contratista. Es decir, no se trata de dos prestaciones independientes —trabajo inicial y entrega final— sino una sola obligación de producir un resultado que, aunque comienza con el trabajo, culmina con su entrega.(40) Por otra parte, la entrega constituye el mo-mento definitivo en que el contratista cumple con su obligación. Si un contratista ejecuta la obra pero no la en-trega, no habrá cumplido con su prestación. Por lo tanto, realizar la obra únicamente resulta insuficiente.(41) La en-trega de la obra completada constituye el cumplimiento de-finitivo de la prestación por parte del contratista. Por tal razón, la doctrina ha enfatizado considerablemente el ele-mento de la entrega al discutir la figura del contrato de arrendamiento de obra como elemento central de la obliga- *564 ción del contratista.(42) Igual ocurre en la jurisprudencia del Tribunal Supremo de España.(43)
Como consecuencia de la importancia del resultado en este contrato, algunos tratadistas han enfatizado que, más que ejecutar la obra, la prestación principal del contratista es, precisamente, entregar la obra ejecutada. Nos explica Castán Tobeñas que “la prestación de la cosa (debidamente confeccionada), eso es, su enajenación, aparece como la prestación principal, siendo la realización de la cosa única-mente el medio para hacer posible aquélla”. (Enfasis suplido.)(44) Es decir, el trabajo sobre la obra es el medio, pero su entrega es el fin. Para Martínez Mas, la entrega de la obra es parte inherente de su terminación y, por lo tanto, del cumplimiento de la obligación por parte del contratista.(45) Nos dice el tratadista que “[l]a última obli-gación del constructor en la fase final del cumplimiento del contrato, es la entrega de la obra al promotor”. (Enfasis suplido.)(46) Es de notar que la obligación del dueño de pa-gar no surge cuando el contratista termina de ejecutar la obra, sino, efectivamente, cuando la entrega y el dueño la recibe.
*565 El contrato de arrendamiento de obra es “un contrato bilateral. Es decir, que las personas que lo celebran se im-ponen obligaciones recíprocas”.(47) Por su propia natura-leza, las contraprestaciones en el contrato de arrenda-miento de obra tienen un orden temporal. Primero, hace falta que el contratista ejecute y entregue la obra. Sólo entonces el dueño tiene la obligación de recibirla y pagar. Como explican Lete del Río y Lete Achirica, la recepción de la obra es “otra de las obligaciones del comitente, correla-tiva a la del contratista de entregar la obra”. (Énfasis suplido.)(48) A igual conclusión llegó el Tribunal Supremo de España:
[E]l arrendamiento de obra ... es un contrato bilateral origi-nador de obligaciones recíprocas, en el que el crédito del contra-tista no se dirige escuetamente a la prestación de pago del pre-cio por parte del comitente, sino a una contraprestación, eso es, a la prestación del cobro del precio a cambio de su prestación de entrega de la obra ejecutada. (Énfasis suplido.)(49)
B. Como hemos dicho, la prestación principal del con-tratista en el contrato de arrendamiento de obra es la pro-ducción y entrega de determinado resultado,(50) Esto es, precisamente, lo que lo distingue del contrato de arrenda-miento de servicios. Al respecto, nos ilustra Vélez Torres que en el contrato de arrendamiento de servicios “lo pro-metido por el contratista es la energía del trabajo, mien-tras que en [el arrendamiento de obras] lo que se promete es la obra o resultado final del trabajo”. (Énfasis suplido.)(51) Puig Peña acoge el mismo criterio: “[E]l contra-tista no promete sólo su trabajo, sino el resultado del *566 mismo.”(52) Esto corresponde a la contraprestación que debe realizar el dueño de la obra, pues éste debe, además de pagar el precio pactado, recibir el la obra. En otras pa-labras, más que el pago de un precio cierto a cambio de un esfuerzo realizado, en el contrato de arrendamiento de obra el dueño realiza un pago al contratista por un resul-tado entregado y recibido. La doctrina científica distingue unánimemente el contrato de arrendamiento de obra del contrato de arrendamiento de servicio, estableciendo clara-mente la diferencia entre el resultado a entregarse y el esfuerzo realizado.(53) Lo mismo ocurre con la jurispruden-cia españolad.(54)
Lo anterior es producto, como nos explica Puig Brutau, de que en el contrato de arrendamiento de obra el contra-tista realiza su trabajo “de manera independiente”.(55) Por lo tanto, lo que éste debe al dueño no es un esfuerzo reali-zado sino un resultado final. Esto es compatible con lo que *567 señala Castán Tobeñas de que la realización de la obra es meramente el medio hacia el fin de su entrega.(56)
De manera congruente, nos explica Puig Brutau que el contrato de arrendamiento de obra y el contrato de com-praventa se distinguen porque en el primero el resultado entregado es una “cosa nueva” o “recién hecha”. (Enfasis suplido.)(57) En otras palabras, en el contrato de arrenda-miento de obra el resultado entregado no puede ser una obra prefabricada genéricamente, sino que debe ser pro-ducto de un encargo particular.(58) Pero tampoco tiene que efectuarse, necesariamente, después del perfeccionamiento del contrato, bastará con que sea una obra de recién fabricación. Lo fundamental es que la prestación principal de la entrega del resultado se haga después de perfeccio-nado el contrato. Será con la entrega del resultado encar-gado, la recepción de la obra y el pago del precio acordado que se extinguirán las respectivas obligaciones, siempre que lo entregado se ajuste a lo encargado en el contrato.(59)
Lo anterior está en sintonía con la naturaleza indepen-diente del trabajo realizado por el contratista. Por eso, el Código Civil establece que, si la obra se destruye antes de su entrega, la pérdida será a costa del contratista y no del dueño, salvo que éste haya incurrido en mora en la recep- *568 ción de la obra o que el dueño haya suplido materiales defectuosos.(60) Antes de la entrega y recepción, el trabajo realizado por el contratista es suyo y solamente en casos muy específicos podrá reclamar el pago al dueño de la obra.(61) Como explica González Poveda: “[S]e entiende que, en tanto no se produce la entrega, la cosa es propiedad del contratista, por lo que éste debe correr con los riesgos de la misma de acuerdo con el principio general de derecho de que las cosas perecen para su dueño” (Enfasis suplido.(62) Según Martínez Mas, la discusión del riesgo está atada a la naturaleza propia del contrato de arrendamiento de obra, que, como hemos visto, se basa más en el resultado entregado que en el trabajo empleado. Nos dice el trata-dista:
La razón de que el constructor asuma los riesgos por [el] perecimiento de la obra antes de su entrega, radica en que, en el contrato de obra, la remuneración del constructor no es por el trabajo empleado y por los materiales incorporados a la obra, sino por la conclusión de la misma, por lo que parece lógico que soporte el riesgo de su fracaso o la pérdida de la obra casi terminada o incluso acabada, pero aún sin ser entregada. (Énfasis suplido.(63)
Si alguna de las partes incumple con sus respectivas prestaciones, podrán ejercer aquellas facultades que les otorga el derecho contractual, como pedir la resolución o el
*569 cumplimiento específico de la obligación, entre otras.(64) Como manifestamos en Master Concrete Corp. v. Fraya, S.E., “[u]na vez perfeccionado el contrato de arrenda-miento de obras —como en todo tipo de contrato— las par-tes están obligadas por lo expresamente pactado”.(65) Si, por ejemplo, la obra no se ajusta a lo especificado en el contrato, corresponde al tribunal de instancia determinar el remedio adecuado, dependiendo de la gravedad del incumplimiento.(66) Igual ocurre si determinada condición del contrato, como el periodo para llevar a cabo la obra, es de naturaleza esencial.
IV
En el caso de autos, el contrato de arrendamiento de obra se perfeccionó, según la normativa aplicable a los con-tratos municipales, el 16 de julio de 2002. No hay duda de que cumplió con todos los requisitos de forma dispuestos en la Ley de Municipios Autónomos y la jurisprudencia. El contratista tenía desde el 16 de julio hasta el 14 de agosto de 2002 para cumplir con su obligación contractual. Es de-cir, el contratista tenía que realizar la prestación de entre-gar la obra en ese período tiempo. En efecto, el 31 de julio, el contratista intentó entregar su obra.
*570 El trabajo independiente realizado por el contratista antes de entregar la obra al Municipio se llevó a cabo entre los días 25 y 28 de junio de 2002, aproximadamente dos semanas antes de perfeccionarse el contrato. Según se alegó en la demanda, el trabajo realizado en esos días co-rresponde a la obra señalada en la subasta 02-30, cuya buena pro se notificó el 4 de junio y en el contrato perfec-cionado el 16 de julio.(67) Se alegó también que la obra co-rresponde a lo que la doctrina clasifica como obra “recién hecha”, dada la proximidad temporal entre el trabajo rea-lizado y el perfeccionamiento del contrato, así como el he-cho de que el trabajo realizado fue el que se encargó espe-cíficamente en la subasta y en el contrato, y no una obra genérica como ocurre en la compraventa.
La prestación a la que se comprometió el contratista el 16 de julio, como parte de un contrato de arrendamiento de obra, era la entrega de la obra ya finalizada. No era nece-sario, como elemento constitutivo de la causa de acción, que el trabajo que produjo esa obra fuera realizado des-pués del perfeccionamiento del contrato. Bastaba con que la obra sea “recién hecha”.(68) En este caso, el trabajo se hizo poco antes de perfeccionado el contrato. El 31 de julio, durante la vigencia del contrato, el contratista cumplió con su obligación: entregó la obra encargada. Correspondía al *571 dueño de la obra cumplir las suyas: recibir la obra y pagar el precio acordado.
La demanda en el caso de autos fue desestimada suma-riamente, habiéndose alegado que no justificaba la conce-sión de un remedio. El Tribunal de Primera Instancia no vio prueba sobre la intención de las partes o sobre la natu-raleza esencial del plazo establecido en el contrato. Se equivoca la mayoría al entrar en los méritos de la contro-versia y resolver que, como cuestión de hecho, el contra-tista incumplió con un elemento esencial del contrato, cuando no se presentó prueba a esos efectos.
Ante los hechos de que el requisito de irretroactividad no está establecido en la Ley de Municipios Autónomos, que el cumplimiento de la obligación se dio después de otorgado el contrato por escrito y que no se pasó prueba sobre la intención de las partes que permitiera concluir que se incumplió una condición esencial del contrato, revo-caría la sentencia sumaria y devolvería el caso al Tribunal de Primera Instancia para la celebración del juicio en sus méritos.

 El contrato dispone que éste estaría vigente del 16 de julio de 2002 al 14 de agosto de 2002.

 Los tribunales inferiores no hicieron determinación de hecho sobre esta ale-gación, dado que el Tribunal de Primera Instancia desestimó la demanda mediante sentencia sumaria.

 Los trabajos fueron realizados los días 25, 26, 27 y 28 de junio de 2002.

 El contrato firmado el 16 de julio proveía para la entrega de certificaciones parciales que debían ser aprobadas por un representante del Municipio. No obstante, como en este caso no hubo desfile de prueba ni juicio en sus méritos, no se sabe si esa obligación contractual era de naturaleza esencial.

 También presentó una certificación adicional reclamando el 10% del precio convenido reservado por el municipio para cubrir posibles desperfectos y vicios de la obra.

 Sentencia del Tribunal de Apelaciones, pág. 2; Apéndice del Certiorari, pág. 160.

 Tampoco fue controvertido el hecho de que el trabajo realizado con dos sema-nas de adelanto fue el mismo que se pactó en el contrato del 16 de julio. De igual forma, ALCO reconoce que, si no se hubiera perfeccionado el contrato el 16 de julio, cumpliéndose con los requisitos formales del ordenamiento sobre contratos munici-pales, no podría exigir el pago por la obra ejecutada. Su argumento se centra en que, una vez se perfeccionó el contrato por escrito y se cumplió con los demás requisitos de forma, podía exigir la contraprestación correspondiente al municipio, de pagarle por el trabajo hecho anticipadamente.

 Certiorari, pág. 5.

 Oposición al Certiorari, pág. 4.

 íd., pág. 5.

 21 L.P.R.A. sec. 4051; Johnson & Johnson v. Mun. de San Juan, 172 D.P.R. 840, 852 (2007); Cordero Vélez v. Mun. de Guánica, 170 D.P.R. 237, 248 (2007); Colón Colón v. Mun. de Arecibo, 170 D.P.R. 718, 725 (2007).

 Mun. Quebradillos v. Corp. Salud Lares, 180 D.P.R. 1003 (2011); Fernández & Gutiérrez v. Mun. San Juan, 147 D.P.R. 824, 830 (1999); Hatton v. Mun. de Ponce, 134 D.P.R. 1001, 1006 (1994).

 Mun. de Quebradillas v. Corp. Salud Lares, supra, pág. 1013. El requisito de remitir una copia del contrato al Contralor no anula el negocio jurídico, pero impide que se puedan exigir las prestaciones hasta tanto se cumpla. Id. Véase, además, Lugo v. Municipio Guayama, 163 D.P.R. 208, 215 (2004).

 Mun. de Quebradillas v. Corp. Salud Lares, supra, pág. 1014.

 Colón Colón v. Mun. de Arecibo, supra, págs. 725-726.

 Fernández & Gutiérrez v. Mun. San Juan, supra, pág. 833.

 Opinión mayoritaria, pág. 538; Colón Colón v. Mun. de Arecibo, supra, pág. 724.

 Mun. de Quebradillas v. Corp. Salud Lares, supra, pág. 1015; Johnson & Johnson v. Mun. de San Juan, supra, pág. 852. Véase, además, Hatton v. Mun. de Ponce, supra, pág. 1005. “[L]os preceptos legales que rigen las relaciones económicas entre entidades privadas y los municipios están revestidos de un gran interés público y aspiran promover una sana y recta administración pública”.

 Mun. de Quebradillas v. Corp. Salud Lares, supra, pág. 1017.

 Cordero Vélez v. Mun. de Guánica, supra, pág. 245; Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990).

 Mar-Mol Co., Inc. v. Adm. Servicios Gens., supra, pág. 871.

 Mun. de Quebradillos v. Corp. Salud Lares, supra, pág. 10; Hatton v. Mun. de Ponce, supra, pág. 1006.

Colón Colón v. Mun. de Arecibo, supra, pág. 727.

 Véase id., pág. 731.

 íd., pág. 726, citando a Cordero Vélez v. Mun. Guánica, supra, pág. 248; Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994 (2009). Controversias relacio-nadas con contratos verbales con entidades municipales han sido la principal gene-radora de nuestra jurisprudencia en esta área y consistentemente hemos rechazado darle eficacia a estos acuerdos. Véanse, por ejemplo: Mun. de Quebradillos v. Corp. Salud Lares, supra; Colón Colón v. Mun. de Arecibo, supra; Fernández & Gutiérrez v. Mun. San Juan, supra; Morales v. Municipio de Toa Baja, supra. Por otro lado, en aquellos casos donde el contrato consta por escrito y se cumplieron los demás requi-sitos formales, hemos sostenido las obligaciones pactadas. Véase, por ejemplo, Johnson & Johnson v. Mun. de San Juan, supra.

 Johnson & Johnson v. Mun. de San Juan, supra, pág. 853. Véase, además, Fernández & Gutiérrez v. Mun. San Juan, supra, pág. 833.

 Johnson & Johnson v. Mun. de San Juan, supra, pág. 855.

 De Jesús González v. A.C., 148 D.P.R. 255, 267 (1999).

 Opinión mayoritaria, pág. 533.

 Nada impide que, por vía de reglamentación, se añadan elementos de forma a la contratación municipal. No obstante, ese no es el caso ante nuestra consideración. La controversia de autos se limitó a la interpretación de la Ley Núm. 81 y los requisitos constitutivos establecidos en ese estatuto.
La Opinión mayoritaria propone que el principio de irretroactividad se puede inferir de la Sección 6 del Capítulo IX del Reglamento de Administración Municipal de la Oficina del Comisionado de Asuntos Municipales (O.C.A.M.). Opinión mayoritaria, págs. 550-551. Sin embargo, la propia mayoría reconoce que era el Reglamento an *561 terior, Reglamento sobre Normas Básicas de O.C.A.M., el que contenía esa prohibi-ción expresa. Es decir, que el reglamento actual eliminó la prohibición absoluta a la contratación retroactiva que establecía el derogado. No creo que este historial nos permita afirmar que el reglamento actual contiene una prohibición similar.

 J.M. Lete del Río y J. Lete Achirica, Derecho de Obligaciones: Contratos, Navarra, Ed. Thomson/Aranzadi, 2006, Vol. II, pág. 515; F. Martínez Mas, El con-trato de obra analizado para constructores y promotores, Valencia, Ed. Cisspraxis, 2000, pág. 15.

 Master Concrete Corp. v. Fraya, S.E., 152 D.RR. 616, 623 (2000). El contrato de arrendamiento de obra está recogido en los Artículos 1480 a 1492 del Código Civil, 31 L.P.R.A. sees. 4121-4133.

 J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 438. Véase, además, J.R. Vélez Torres, Curso de Derecho Civil: derecho de contratos, San Juan, Ed. Rev. Jur. U.I.P.R., 1990, T. IV, Vol. 2, pág. 326.

 Véanse: M. Albadalejo, Derecho Civil, 8va ed., Barcelona, T. II, Vol. 2, pág. 309 (“[E]n el [contrato de obra] se promete un resultado” (énfasis en original)); J.M. Manresa Navarro, Comentario al Código Civil español, 5ta ed., Madrid, Ed. Reus, 1950, T. X, pág. 894; J. Santamaría Ansa, Comentario al Código Civil, Madrid, Ed. Rev. Der. Privado, 1958, T. II, pág. 637; P. González Poveda en I. Sierra Gil de la Cuesta, Comentario del Código Civil, Barcelona, Ed. Bosch, 2000, T. IV, pág. 620; M. Medina De Lemus, Derecho Civil: obligaciones y contratos, Madrid, Ed. Dilex, 2005, T. II, Vol. 2„ pág. 145 (quien enfatiza en que ese resultado conlleva algo “completo y acabado, independientemente del trabajo o tiempo que costó obtenerlo”); Lete del Río y Lete Achirica, op. cit., pág. 515; R. Hernández Bobadilla, El contrato de obra y su regulación en la legislación guatemalteca, Guatemala, Ed. U. San Carlos, 1966, pág. 17; Martínez Mas, op. cit., pág. 18 (quien recalca que se trata de un “determinado resultado”).

 Véanse: Sentencia de 10 de mayo de 1997; Sentencia de 30 de enero de 1997, Núm. 845/1997 Repertorio de Jurisprudencia Aranzadi 1320; Sentencia de 4 de no-viembre de 1989; Sentencia de 30 de mayo de 1987; Sentencia de 6 de noviembre de 1982; Sentencia de 19 de diciembre de 1964, Núm. 5900/1964 Repertorio de Juris-prudencia Aranzadi 3600; Sentencia de 23 de noviembre de 1964, Núm. 5453/1964 Repertorio de Jurisprudencia Aranzadi 3294, en donde se conecta el concepto del resultado con el de finalidad.

 Según la Real Academia Española, la palabra resultado significa “[e]fecto y consecuencia de un hecho, operación o deliberación”. Real Academia Española, Diccionario de la Lengua Española, 22da ed., Madrid, Ed. Espasa Calpe, 2001, T. II, pág. 1962.

 Master Concrete Corp. v. Fraya, S.E., supra, pág. 624. Véase, además, Alba-dalejo, op. cit, pág. 317.

 Puig Brutau, op. cit., pág. 468; F. Puig Peña, Tratado de Derecho Civil Español, Madrid, Ed. Rev. Der. Privado, 1951, T. IV, Vol. 2, pág. 302.

 Master Concrete Corp. v. Fraya, S.E., supra, pág. 624, citando a Albaladejo, Derecho Civil, op. cit., pág. 49. El Artículo 1491 del Código Civil dispone: “Si no hubiere pacto o costumbre en contrario, el precio de la obra deberá pagarse al ha-cerse la entrega.” (Énfasis suplido.) 31 L.P.R.A. sec. 4132. Como puede notarse, en el contrato de arrendamiento de obra el momento crucial de las prestaciones es la entrega y recepción de la obra, no el momento cuando se realizó el trabajo.

 Martínez Mas, op. cit., pág. 45: “Las dos obligaciones fundamentales del constructor son: la realización de la obra conforme a lo pactado y la entrega de la misma.” Véase, además, Hernández Bobadillo, op. cit., pág. 17.

 Como explica Medina de Lemus: “La primera obligación del contratista es realizar la obra en las condiciones pactadas.” (Énfasis suplido.) Medina de Lemus, op. cit, pág. 146. Véanse, además: Albaladejo, op. cit., pág. 317; Hernández Bobadi-llo, op. cit, pág. 17 (“[La promesa del resultado] consiste, en primera forma, en un acto de producción o creación en sentido propio, o sea ... en la realización de una obra” (énfasis suplido).

 González Poveda, op. cit., pág. 666: “Finalizada la obra, el contratista viene obligado a entregarla en el modo y dentro del plazo convenidos”; Medina de Lemus, op. cit., pág. 149: “Evidentemente la obra debe ser entregada una vez hecha”; Alba-ladejo, op. cit., pág. 317; Manresa y Navarro, op. cit., pág. 918, enfatizando la impor-tancia de la entrega; Santamaría, op. cit., págs. 636-637.

 Sentencia de 18 de abril de 1979, Núm. 1406/1979 Repertorio de Jurispru-dencia Aranzadi 1156, explicando que la obligación del dueño de pagar la obra es “a cambio de [la] prestación [del contratista] de entrega de la obra ejecutada”. (Énfasis suplido.) Sentencia de 26 de octubre de 1978, Núm. 3286/1978 Repertorio de Jurispru-dencia Aranzadi, en donde el alto foro español resolvió que no hay deber de recibir si el contratista no cumplió “la obligación de entregar [la obra] en el tiempo y forma convenidos”. Sentencia de 5 de febrero de 1975, Núm. 330/1975 Repertorio de Juris-prudencia Aranzadi 252: “[El cqntratista] no cumplió con su obligación de entregar la obra en el plazo convenido.” (Énfasis suplido.) Véanse, además: Sentencia de 30 de enero de 1997, Núm. 845/1997 Repertorio de Jurisprudencia Aranzadi; Sentencia de 1 de junio de 1982, Núm. 3401/1982 Repertorio de Jurisprudencia Aranzadi.

 J. Castán Tobeñas, Derecho Civil español, común y fared, 9na ed., Madrid, Ed. Reus, 1961, T. IV, pág. 455.

 Martínez Mas, op. cit., pág. 50.

 íd.

 íd.

 Lete del Río y Lete Achirica, op. cit., pág. 521.

 Sentencia de 18 de abril de 1979, Núm. 1406/1979 Repertorio de Jurispru-dencia Aranzadi 1156.

 puj[g Peña, op. cit., pág. 299.

 Véase Vélez Torres, op. cit., pág. 325.

 Puig Peña, op. cit., pág. 299.

 Santamaría, op. cit., pág. 637: “La diferencia de mayor relieve entre el arrendamiento de obra Qocatio opeñs) y el de servicios Qocatio operarum) está en su aspecto económico, pues en el contrato de trabajo se retribuye el tiempo y en el de obras el resultado.” (Énfasis suplido.) Lete del Río y Lete Achirica, op. cit., pág. 515: “Lo que caracteriza a este contrato es que el empresario o contratista se obliga a prestar no el trabajo como tal, sino el resultado del mismo (la obra), sin consideración al esfuerzo necesario para obtenerlo.” (Énfasis suplido.) Incluso, el autor señala que, salvo casos particulares donde las características personales del contratista fueron el factor principal en su selección, no es necesario que el trabajo haya sido realizado por éste; Castán Tobeñas, op. cit., pág. 454: “La verdadera nota distintiva del contrato de empresa es, como ya vimos, la de que lo prometido y qué constituye su objeto no es la energía del trabajo o el trabajo como tal (al modo que lo es en el arrendamiento de servicios), sino la obra o resultado del trabajo.” (Énfasis en original.) Véanse, ade-más: Albaladejo, op. cit., pág. 309; Manresa y Navarro, op. cit., pág. 923.

 Sentencia del Tribunal Supremo de España de 10 de junio de 1975, Núm. 3265/1975 Repertorio de Jurisprudencia Aranzadi 2407. Según el alto foro español, la diferencia entre el contrato de arrendamiento de servicios y el contrato de arren-damiento de obra:
"... radica en el objeto inmediato de la obligación del arrendador, de manera que si éste se obliga a la prestación de servicios o de trabajo o de una actividad en sí mismo, no del resultado, que aquella prestación produce, el arrendamiento es de servicios y, en cambio, si se obliga a la prestación de un resultado, sin consideración al trabajo que lo crea, el arrendamiento es de obra.” Véase, además, Sentencia de 10 de febrero de 1987, Repertorio de Jurisprudencia Aranzadi 703.

 pujg Brutau, op. cit., pág. 439.

 Castán Tobeñas, op. cit., pág. 455.

 Puig Brutau, op. cit., pág. 439 La doctrina ha profundizado en las diferen-cias, pero sobre todo las similitudes, entre el contrato de compraventa y el contrato de arrendamiento de obra. Muchos tratadistas enfatizan el hecho de que mientras más importancia se dé al material utilizado en la obra y menos importancia al tra-bajo realizado aplicarán las reglas del contrato de compraventa, particularmente cuando el material utilizado es del propio contratista. Véase M. Medina de Lemus, op. cit., pág. 145. En estos casos, muchos hablan de un contrato mixto de arrenda-miento de obra y compraventa. Véanse: Manresa y Navarro, op. cit., pág. 914; Castán Tobeñas, op. cit., págs. 454-455; J. Santamaría, op. cit., pág. 637. En particular, Castán Tobeñas explica que cierto sector de la doctrina opina “que el contrato por el cual el trabajador proporciona la materia es, por lo general, una venta de cosa futura, pero será arrendamiento de industria si los materiales sólo son lo accesorio”. (Enfasis suplido.) Castán Tobeñas, op. cit., pág. 455. Señala Vélez Torres que la línea diferen-ciadora entre el contrato de ejecución de obra y el de compraventa es “muy borrosa”. Vélez Torres, op. cit., pág. 326.

 vélez Torres, op. cit., pág. 327.

 Id., pág. 332.

 Arts. 1481-1482 del Código Civil, 31 L.P.R.A. sees. 4122-4123.

 Uno de estos escenarios es cuando el dueño desiste de la obra mientras ésta se está realizando. En estos casos, el dueño deberá abonar todos sus gastos, trabajos y utilidad que pudiera obtener de la obra. Art. 1486 del Código Civil, 31 L.P.R.A. sec. 4127.

 González Poveda, op. cit., pág. 625 Esta idea surge de la máxima res pent domino. C. Gómez Estrada, De los Principales Contratos Civiles, 3ra ed., Bogotá, Ed. Temis, 1999, pág. 322. Cabe clarificar que, en casos de obras sobre bienes inmuebles propiedad del comitente, la titularidad del contratista se limita a la obra en sí y no al bien sobre el que se hace. Por otro lado, si se trata de bienes muebles creados en su totalidad por el contratista, independientemente de la titularidad de los materiales utilizados, la titularidad del bien completo recaerá sobre éste.

 Martínez Mas, op. cit., pág. 27 Véase, además, Santamaría, op. cit, págs. 636-637, Castán Tobeñas, op. cit., pág. 459; Hernández Bobadilla, op. cit., pág. 20.

 Id. También estarán disponibles las defensas de exceptio non adimpleti con-tractus y exceptio non rite adimpleti contractus. Véase Puig Peña, op. cit., pág. 308. La recepción de la obra por parte del dueño requiere que ésta esté “bien terminada”. Id., pág. 303. Véase, además, González Poveda, op. cit., pág. 687; Sentencia de Tribunal Supremo de España de 18 de abril de 1979, Repertorio de Jurisprudencia Aranzadi 1406.

 Master Concrete Corp. v. Fraya, S.E., supra, págs. 624-625.

 En el caso de autos, le correspondería al Tribunal de Primera Instancia, después de interpretar el contrato y auscultar la intención de las partes, determinar si el incumplimiento con la entrega de certificaciones parciales constituye un incum-plimiento sustancial del contrato y si, en efecto, la obra se ajusta a lo especificado en el contrato. A esos efectos, véase Martínez Mas, op. cit., pág. 63, y su discusión sobre las certificaciones parciales. Véase también la Sentencia del Tribunal Supremo de España de 22 de julio de 1997, Núm. 5806/1997 Repertorio de Jurisprudencia Aranzadi. También le corresponderá determinar si, en efecto, la obra se ajusta a lo especificado en el contrato.

 Esto no quita cualquier reclamación que pueda tener el municipio en cuanto a si el cumplimiento por parte del contratista es defectuoso, incompleto o si se desvió de lo pactado. En estos momentos nos limitamos a analizar si hay causa de acción. Le corresponde al foro primario dilucidar los méritos de este caso en particular.

 Conocemos los problemas que pueden generarse en casos en los que un contratista realice su obra antes de que su contrato se ponga por escrito. Sin duda, los municipios tienen un interés importante de poder inspeccionar regularmente la obra mientras se está realizando, de velar por que se esté cumpliendo con las espe-cificaciones del contrato y de evitar que se subcontrate ilegalmente el trabajo, entre otros asuntos. No obstante, la protección de este interés no requiere concluir, de entrada y de manera absoluta, que no existe una causa de acción a favor del contratista. Lo que corresponde es examinar los méritos del caso en un juicio plena-rio determinar qué, cómo y cuándo se llevó a cabo el trabajo, cuáles eran las inten-ciones de las partes y qué relación hay entre lo contratado y lo ejecutado. Nada de lo anterior supone que el contratista debe prevalecer en los méritos, sino, meramente, que tiene derecho a su día en corte para demostrar que entregó lo que se le encargó.